### PERKINS v. THE STATE.

CRIMINAL LAW.—*False Pretences.*—*Obtaining Money to Prevent Arrest.*—
One who falsely represents to another, that he, the former, is an officer

possessed of a warrant and the power to arrest the latter for a pretended crime, and who thereby obtains of the latter any thing of value, as a consideration for not making the arrest, is guilty of the crime defined in section 27 of the felony act, 2 R. S. 1876, p. 436. See opinion for indictment.

SAME.—*Representation which can not Deceive.*—A representation by the defendant, to the party defrauded, that the former has authority to compromise the crime for which he threatens to arrest the latter, is one which the latter is bound to know is false.

From the Clinton Circuit Court.

*A. E. Paige, S. O. Bayless* and *J. U. Gorman,* for appellant.

*T. W. Woollen,* Attorney General, and *W. R. Moore,* Prosecuting Attorney, for the State.

BIDDLE, J.—The appellant and Lewis C. Baum were jointly indicted for obtaining money and a promissory note feloniously, by false pretences.

The indictment contains three counts. The appellant was found guilty and sentenced to imprisonment in the state-prison on the second count, which was tested in the court below by a motion to quash and a motion in arrest of judgment, and held good. The sufficiency of the second count of the indictment is the only point presented for our decision. The objections made to this count by the appellant are:

1. That the pretences alleged are not such as would deceive a person of ordinary prudence and caution;

2. That the alleged false pretences were made in reference to a future event, and not concerning an existing fact.

The crime is charged in the following words:

" That Thomas Perkins and Lewis C. Baum, on the 13th day of November, 1878, at the county of Clinton and State of Indiana, did then and there feloniously, with intent to cheat and defraud one Joseph Mink, did then and there, unlawfully, feloniously, knowingly and designedly and falsely pretend and represent to said

Joseph Mink, that they, Thomas Perkins and Lewis C. Baum were officers, to wit, State marshals, and had a warrant for the arrest of him, the said Joseph Mink, for the crime of forgery, that is to say, that said Mink, on the 12th day of November, 1878, at the county of Clinton and State of Indiana, unlawfully and feloniously uttered and tendered in payment, to persons to the grand jurors unknown, a certain false, forged and counterfeit piece of silver coin, in the resemblance and similitude of the silver coin of the United States of America, commonly called a half dollar, and at that time current in the State of Indiana, he, the said Joseph Mink, then and there knowing said false, forged and counterfeit piece of silver coin to be false, forged and counterfeit, with intent, then and there, to wit, on the 12th day of November, 1878, to defraud said person to the grand jurors unknown; that said Perkins and Baum then and there, to wit, on the 13th day of November, 1878, with intent to cheat and defraud said Mink, did unlawfully, feloniously and falsely pretend and represent to him that they had power and authority to arrest and imprison him for said crime; that they, as such officers, had the power to compromise said crime with him for money, and, as such marshals, could compromise any crime in the State; and did then and there propose to said Joseph Mink, if he, the said Mink, would pay and give to them the sum of fifteen dollars in money and a note for seventy-five dollars, due in four months, with Charles Mink surety thereon, they would not arrest and imprison him, said Joseph Mink, for said alleged crime, and would settle and compromise said crime of forgery; that said Joseph Mink, believing said pretences and representations, so made by said Perkins and Baum, to be true, and believing that they were officers, to wit, State marshals, and believing that said defendants had come to arrest and impris-

on him, and believing they had power to arrest and imprison him, and also believing that they, as such officers, were authorized and had power to compromise and settle said alleged forgery, and being deceived thereby, was induced by reason thereof to deliver to said Perkins and Baum his moneys, goods and chattels, to wit, one bank-bill of the denomination and value of five dollars, and one bank-bill of the denomination and value of ten dollars (a more particular description of said bank-bills is to this grand jury unknown); and one promissory note due four months after date, with Charles Mink surety thereon, which said note is of the following tenor, to wit:

"'$75.00                    FRANKFORT, Nov. 13th, 1868.

" 'Four months after date we promise to pay Thomas Perkins or order seventy-five $\frac{00}{100}$ dollars, with interest per cent. per annum, value received, without any relief from valuation or appraisement laws.

" 'JOSEPH MINK,

" 'CHARLES MINK.'

"Which said promissory note was then and there of the value of seventy-five dollars; that said two bank-bills and said promissory note were then and there of the aggregate value of ninety dollars, which said Perkins and Baum received and obtained of said Joseph Mink by means of the false representations and pretences so made as aforesaid, with intent unlawfully, feloniously and falsely to cheat and defraud said Joseph Mink of his said two bank-bills, and of his said promissory note; whereas, in truth and in fact, said Perkins and Baum were not then and there State marshals, nor were either of them State marshals, or any other officers authorized to arrest and imprison said Joseph Mink, nor had they, said Perkins and Baum, a State warrant legally issued for the arrest of said Joseph Mink, on said alleged charge of forgery; nor were said Perkins and Baum authorized, neither had they the power, to le-

gally compromise and settle said alleged forgery, or any other crime, for said money and note; neither had they the power to compromise any crime in the State; that said Perkins and Baum well knew, at the time they so made said representations and pretences, that each and all of said representations and pretences were false. So the grand jury aforesaid," etc.

The law is well settled, that, in an indictment of this kind, the false pretences by which a thing of value is obtained must, to be criminal, be such as would deceive a person of ordinary sense, prudence and caution, and induce him to part with the thing obtained from him, and they must be made of some existing state of facts; if made of facts to occur in the future, which may never exist, they will not be sufficient, however false and criminal they may be. The difficulty lies in applying the law to the facts averred in the indictment before us.

The counsel for appellant have furnished us with an able and valuable brief, which has aided us much in our researches. The strongest case they have cited in favor of the appellant is The People v. Stetson, 4 Barb. 151. In that case, the charge was that Stetson, "with felonious intent to cheat and defraud one Royal Barlow, feloniously, unlawfully, knowingly and designedly, falsely pretended and represented to said Barlow that he the defendant was a constable, and had a warrant issued by Butler Bardwell, Esq., a justice of the peace of said county, against said Barlow, for a rape, and produced a forged and false instrument purporting to be such warrant; and represented and pretended to said Barlow that said pretended warrant had been issued by said Bardwell, and then and there proposed if said Barlow would pay him twenty-five dollars, and also offered to settle the same if Barlow would deliver him a certain silver watch, the property of said Barlow. That Barlow believing the said

false pretences and representations, and being deceived thereby, was induced by reason thereof to deliver and did deliver to said Stetson ' one silver watch of the proper moneys, valuable things, goods and chattels, personal property and effects of the said Royal Barlow; which Stetson received and obtained by means of color of the pretences and false tokens and representations aforesaid, and with intent, etc., to cheat and defraud the said Royal Barlow of the said watch."

The above averments are then negatived in the indictment.

This indictment was held insufficient on demurrer; but there seems to be an important difference between that case and the one before us. They are similar in the pretence of having the warrant, but in that case there was no threat to arrest Barlow if he did not deliver the watch, and no demand of the watch, to be protected from arrest; it was an offer to settle the same if Barlow would deliver the watch, without any pretence that he had any authority to settle it by receiving the goods, and it was upon this ground, as we understand the opinion of MAYNARD, P. T., that the indictment was held to be insufficient.

In the case before us, the pretence alleged is, that they had the warrant and the power to arrest Mink, but would not arrest him if he would comply with their terms as stated. The difference between an offer to settle the matter on certain terms, without saying any thing about an arrest, and a promise not to arrest if certain terms demanded were complied with, is important. The one is an offer, the other a demand; the one says nothing about an arrest, the other implies a threat that they would arrest unless the terms were complied with. If the pretence had been true, namely, that they were officers and had the warrant, they could have lawfully arrested him; add to this the pretence that if he did not comply with their demands

they would arrest him, and we think they were calculated to deceive a person of ordinary sense, prudence and caution; and we think these averments contain the main substance of the indictment.

The promise made to Mink that they would " settle and compromise " the crime is unimportant; it not only referred to a future fact, but was a promise which Mink was bound to know they could not perform.

Upon a careful study of the arguments on behalf of the parties, and a full examination of the authorities, we have arrived at the conclusion that the indictment is sufficient, and, therefore, that the court did not err in overruling the motions to quash and in arrest of judgment. *The People* v. *Haynes,* 11 Wend. 557; *The People* v. *Haynes,* 14 Wend. 546; *The People* v. *Williams,* 4 Hill, 9; *Smith* v. *The People,* 47 N. Y. 303; *The State* v. *Mills,* 17 Maine, 211; *The People* v. *Pray,* 1 Mich. N. P. 69; *In re Greenough,* 31 Vermont, 279; *Cowen* v. *The People,* 14 Ill. 348; *The State* v. *Magee,* 11 Ind. 154; *Maley* v. *The State,* 31 Ind. 192; *Todd* v. *The State,* 31 Ind. 514; *Leobold* v. *The State,* 33 Ind. 484; *Jones* v. *The State,* 50 Ind. 473; *Keller* v. *The State,* 51 Ind. 111; *Clifford* v. *The State,* 56 Ind. 245; *The State* v. *Timmons,* 58 Ind. 98; *Bonnell* v. *The State,* 64 Ind. 498; 2 Bish. Cr. Law, secs. 433-443.

The judgment is affirmed, at the costs of the appellant.