Strong v. State.

No. 10,633.

STRONG v. STATE.

CRIMINAL LAW.— *Obtaining Money Under False Pretences.*— *Indictment.*—
*Benevolent Society.*—An indictment, charging that the defendant, on, etc.,
at, etc., by falsely pretending to be a member of a certain Masonic lodge
in Ohio, that he was on his way to his father-in-law's funeral, and was
out of money to travel, and by exhibiting a forged receipt from the
Ohio lodge for dues, obtained from M. lodge of Masons a sum of money
named, upon a promise to repay the same, with intent to defraud
M. lodge, knowing said pretences to be false and the receipt to be forged,
is good on motion to quash.

SAME.—*Evidence.*—Evidence, in such case, that the defendant had, by pre-
tences somewhat similar, at another time and a distant place, defrauded
another Masonic lodge, is not admissible. ELLIOTT, J., dissents.

From the Morgan Circuit Court.

*A. M. Cunning,* for appellant.

*F. T. Hord,* Attorney General, *J. D. Alexander,* Prosecut-
ing Attorney, and *W. B. Hord,* for the State.

NIBLACK, J.—This was a prosecution against George E.
Strong for obtaining money under false pretences. R. S. 1881,
section 2204.

The indictment was in four counts. Motions to quash each
count were severally overruled. A jury found the defendant
guilty as charged in the first count of the indictment; that
he should be fined in the sum of $10, and be imprisoned in
the State's prison for the term of four years. A motion for
a new trial being first overruled, judgment was rendered upon
the verdict.

The first count of the indictment charged that the defend-
ants, on the 27th day of September, 1881, for the purpose of
defrauding Martinsville Lodge No. 74, of Free and Accepted
Masons, feloniously, falsely and designedly represented to Jef-
ferson K. Scott, the Worshipful Master, and Enoch M. Woody,
the Treasurer, of said lodge, at the county of Morgan, in this
State, that he, the defendant, was a member of Mercer Lodge
No. 121, of the same order, located at Saint Marys, in the State

Strong v. State.

of Ohio, and, as an evidence that he was a member of said last named lodge, then and there exhibited to the said Scott and Woody a receipt, partly in print and partly in writing, as follows:

"HALL OF MERCER LODGE No. 121, F. & A. M.,
ST. MARYS, O., ——, 1879.

"Received of Bro. George E. Strong for dues from ——, to ——, 1879, $7.50.                                    C. H. PHELPS,

"[L. S.]                                                    Secretary."

That the defendant further represented to the said Scott and Woody that his father-in-law had just died at the city of Vincennes, in this State, and that his, the defendant's, wife was then at Vincennes, awaiting his arrival at that place to assist her in taking the remains of his said father-in-law back to said town of St. Marys, in the State of Ohio, for interment; that he, the defendant, was then on his way from St. Marys to Vincennes to join his wife and to assist her as stated; that he was then without money or means to proceed further, and was greatly in need of the sum of $3.85, to enable him to reach Vincennes; that his wife had with her sufficient money to pay all necessary expenses, and that if said Martinsville Lodge would advance him that sum he would repay the same after reaching Vincennes; that the said Scott, believing said representations to be true and said receipt to be genuine, and relying upon the truth of such representations and the genuineness of such receipt, and being deceived thereby, and having the requisite authority to grant the relief solicited by the defendant, by the use of funds belonging to said Martinsville Lodge, issued an order upon the said Woody, as the treasurer of said lodge, in the following form:

"MARTINSVILLE, IND., Sept. 27th, 1881.

"E. M. WOODY, Treas. Martinsville Lodge No. 74, F. & A. Masons: You will please pay to the bearer, a travelling brother in distress, $3.85.        JEFF. K. SCOTT, W. M."

And delivered the same to the defendant, for whose use and

benefit it was intended; that the defendant thereupon presented said order to the said Woody, who accepted it and paid the amount named therein to the defendant for and on behalf of said Martinsville Lodge; that the defendant was not then a member of said Mercer Lodge No. 121, nor of any other Masonic lodge; that said paper purporting to be a receipt for dues to that lodge, and exhibited to the said Scott and Woody was a false, forged and fraudulent writing; that all the other representations made by the defendant for the purpose of obtaining said money were untrue, and that the defendant well knew that all the representations herein above set forth, as made to the said Scott and Woody, were untrue when he made them.

It is first contended on behalf of the appellant, that the court below erred in overruling his motion to quash this count of the indictment:

*First.* Because it is not made sufficiently to appear that Scott and Woody relied on his statements as to the existing facts as reasons for letting him have the money he obtained from them, but that the fair inference is, that they relied on his promise to repay the money, which was not a fraudulent representation within the meaning of the statute.

*Secondly.* Because it was apparent from the facts averred that the money was given to the appellant as a charity merely, and hence in a way that made the representations upon which it was obtained immaterial.

In cases of this kind the false representations must be as to some existing fact, and not as to some promise for the future. 2 Bishop Crim. Law, section 420; *Keller* v. *State*, 51 Ind. 111; *Bonnell* v. *State*, 64 Ind. 498; *Perkins* v. *State*, 67 Ind. 270 (33 Am. R. 89). The representations must also be relied on. 2 Bishop Crim. Law, *supra*, section 462.

We think the count under consideration made it sufficiently obvious that the most material and most important representations made by the appellant were as to facts assumed to be then existing, and that the appellant's promise to repay the

money was only incidentally made to give a favorable color-ing to his representations as to his alleged membership in Mercer Lodge, at St. Marys, in Ohio, and as to the genuine-ness of the receipt at the time exhibited by him; also, that these last named representations were the ones mainly, if not entirely, relied on by Scott and Woody.

In the case of *People* v. *Clough*, 17 Wendell, 351, it was held, in an ably written opinion, that an indictment would not lie for obtaining money by false pretences where the money is parted with as a charitable donation, although the pretences moving to the gift were false and fraudulent; but the statute under which that case was decided was less comprehensive than is ours on the subject of false pretences, and the conclu-sion there reached, considered with reference to the statute of New York then in force, is not in accordance with the weight of authority, and does not, in our estimation, afford a safe precedent even under a statute similar to the one under which that decision was made. A contrary doctrine has been held in England and in Massachusetts. Bishop Crim. Law, *supra,* section 467; *Commonwealth* v. *Whitcomb*, 107 Mass. 486; *Reg.* v. *Hensler*, 11 Cox C. C. 570; *Reg.* v. *Jones*, Temp. & M. 270.

The count before us is very long and very minute in the details of its averments. We have, consequently, only con-sidered it in connection with the objections urged to it at the present hearing. Thus considered, the count appears to us to have been correctly held good upon the motion to quash it in the court below.

Questions are made upon the sufficiency of the other counts of the indictment, but, as the appellant was convicted only upon the first count, this appeal presents no question upon any of the other counts. *Short* v. *State*, 63 Ind. 376; *Bonnell* v. *State, supra.*

At the trial one Charles H. Phelps was introduced as a witness on the part of the State, and, over the objection of the appellant, testified substantially as follows: "I live at

St. Marys, Ohio, and belong to Mercer Lodge No. 121, of Free and Accepted Masons; I have seen the defendant before; I was secretary of our lodge during the entire years of 1879 and 1880; I am a physician, and had the blank receipt book and the seal of the lodge in my office. The defendant came to me with a note from Mr. S. Carr, who was then our Worshipful Master; the note said for me to try the defendant in the secret work of Masonry, and, if I found him all right, to pay him $5, as a travelling brother in distress; I did try him, and was satisfied he was a Mason, and a very bright one; he told me his father-in-law had just died, and that he was on his way to the funeral; that he had run out of money, but that his wife had plenty of money to repay the amount and furnish all necessary expenses after he reached her, and that he would repay the amount I paid him, (which was) $5, as a travelling brother in distress; this was on June 21st, 1880, at St. Marys, in the State of Ohio; he stayed in my office quite a good while, and was there while I was out; I did not give him any blank receipt whatever, and did not sign my name to any paper, or give him or put the seal of the lodge on any paper for him; he never paid the $5 back. * * * * * * He then said he was a member of Federal Lodge No. 1, Washington, D. C., and that he was in the Government employ as a postoffice detective."

The witness further testified that he had been for a long time a member of Mercer Lodge No. 121, above referred to by him, and that the appellant was not then and had never been a member of that lodge, and that he had never signed, nor authorized to be signed, his name to the receipt exhibited by the appellant to Scott and Woody; that a blank receipt was torn out of his receipt book some time between June 17th, 1880, and the 10th day of the succeeding August, and that while the appellant was alone in his, witness's, office, he had ample opportunity to fill up and put the seal of Mercer Lodge upon one of the blank receipts in his, witness's, receipt book.

It is in the next place contended, on behalf of the appellant,

that the court erred in permitting Phelps to testify as above to the fact that the appellant had likewise obtained money from him, and to the pretences upon, and the circumstances under, which the money was obtained, and that, for that reason, a new trial ought to have been granted.

We find it difficult to deduce from the text-writers and decided cases any well defined rule which will enable us to determine when proof of the perpetration of, or of the attempt to perpetrate, a similar offence is admissible as evidence of the intention with which the crime charged was committed.

The intention with which a particular act is done constitutes often the burden of the inquiry, and to prove the intent it becomes necessary, in many instances, to extend the examination beyond the particular transaction concerning which the accused is upon his trial. For the purpose, therefore, of proving the intent, not of proving the act itself, it is often permissible to show other criminal transactions of the same sort springing from the like mental condition. Bishop, in his work on Criminal Procedure, after giving various illustrations as to the proper application of this rule in criminal practice, sums up his conclusion in the following words:

" It is, that, though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet, whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; and it is also admissible, if it really tends thus, as in the facts of most cases it does not, to prove the act itself." 1 Bishop Crim. Proceed., section 1067.

Wharton, in his treatise on Criminal Evidence, referring to the same subject, says:

" In connection with the last exception are to be noticed cases in which, a party's intention being in issue, acts of a similar character are admissible. * * * * * * * *

"It is essential, however, that such evidence, if admitted, should be simply to prove intent, and not to prove character, or establish a substantive and independent crime. Thus, in 1861, in Massachusetts, a new trial was granted in a case of embezzlement, where evidence of distinct acts of fraud was admitted, but where it did not appear that such evidence was limited by the judge, in his instructions to the jury, to the question of intent." Wharton Crim. Ev., section 46.

Roscoe's Criminal Evidence states the rule to be that there are cases in which evidence is allowed to be given of the prisoner's conduct on other occasions, where it has no other connection with the charge under enquiry than that it tends to throw light on what were his motives and intention in doing the act complained of. This can not be done merely with the view of inducing the jury to believe that because the prisoner has committed a crime on one occasion he is likely to have committed a similar offence on another, but only by way of anticipation of an obvious defence, such as that the prisoner did the act charged against him without any guilty knowledge.

That author continuing, at page 92, says : " There are three classes of offences in which, from the nature of the offence itself, the necessity for this species of evidence is so frequently necessary that they will be considered separately ; these are conspiracy, uttering forged instruments and counterfeit coin, and receiving stolen goods.   In these the act itself which is the subject of enquiry is almost always of an equivocal kind, and from which *malus animus* can not, as in crimes of violence, be presumed ; and almost the only evidence which could be adduced to show the guilt of the prisoner would be his conduct on other occasions."

From these authorities, and others of like import which might be cited if deemed necessary, it appears to us to be fairly inferable that where the intent with which an alleged offence was committed is equivocal, and such intent becomes an issue at the trial, proof of the commission of other similar

offences, within certain reasonable limits, is admissible, as tending to throw light upon the intentions of the accused in doing the act complained of; but that where, from the nature of the offence under enquiry, proof of its commission as charged carries with it the evident implication of a criminal intent, evidence of the perpetration, or attempted perpetration, of other like offences will not be admitted.

In the case at bar the representations charged to have been made by the appellant to Scott and Woody were concerning matters peculiarly within the appellant's knowledge, and, when proven to have been made, and to have been falsely made, as the evidence fully tended to prove, the inevitable inference was that such representations were made with a criminal intent and for a fraudulent purpose. The intent, therefore, with which the appellant made the representations charged against him, was not an issue at the trial in the sense in which Wharton, *supra*, speaks of the intent as sometimes becoming an issue. Consequently, the testimony of Phelps, tending to show that the appellant had at another place committed an offence similar to the one for which he was then on trial, was erroneously admitted, and a new trial ought, for that reason, to have been granted. *Corbin* v. *Flack*, 19 Ind. 459; *Todd* v. *State*, 31 Ind. 515; *Fletcher* v. *State*, 49 Ind. 124 (19 Am. R. 673).

The judgment is reversed and the cause remanded for a new trial. The clerk will give the necessary notice for a return of the prisoner to the custody of the sheriff of Morgan county.

### DISSENTING OPINION.

ELLIOTT, J.—I agree that the general rule is that it is not competent in a prosecution for one offence to give evidence of another distinct and independent crime; but, while this is the general rule, there are exceptions to it as firmly settled and as generally recognized as the rule itself. The prosecution is never denied the right to give evidence otherwise competent, upon the ground that it tends to prove

another offence.    It is my conviction that the evidence given by the State in the present case was competent, even upon the concession that it involved proof of a distinct offence committed at a different time from that charged in the indictment.

It was unquestionably proper for the State to prove that the token used by the accused was a false one, and this could be done by proving the manner in which it was procured. The act of procuring the false receipt from the secretary of the Ohio lodge was an essential matter of evidence, and, where it is competent to prove an act it is always competent to prove conduct and declarations accompanying the act.    I do not understand the rule to restrict the doctrine of *res gestæ* to evidence of declarations accompanying the immediate act constituting the crime, but that it extends to conduct and declarations connected with an act which is a material part of the offence, whether it relates to malice, knowledge, or intent. Wherever it is competent for the prosecution to prove an act, it is proper to prove the declarations made at the time the act was done, and forming part of the same transaction.    I affirm, therefore, that as it was competent for the prosecution to prove the procurement of the receipt and impression of the seal of the Ohio lodge, it was proper to prove what was said and done at the time by the accused.

I think the evidence competent on another ground, and that is, that all that was said and done was necessary in order to enable the jury to judge of the credibility of the testimony of Phelps.    Without the conduct and declarations of the accused it might have seemed very improbable that he would leave an entire stranger in possession of his office, with access to important books and papers ; whereas, with all the declarations and the whole conduct of the accused before the jury, the witness' testimony became probable and consistent.

But I think there is a broader ground upon which the competency of the testimony can be established. It was essential for the State to show guilty knowledge and a criminal intent to practice deception upon others. A recent writer says : " So

it seems that the guilty knowledge of the falsehood of a pretence may be shown by evidence of a previous obtaining or attempting to obtain by false pretences." Harris Crim. Law, 369. The case of *Regina* v. *Francis*, L. R., 2 C. C. R. 128, is directly in point. That was a prosecution for attempting to obtain money by a false pretence, and the reporter's note thus shows the point reserved: "Evidence was then offered, in order to prove guilty knowledge in Francis, that he had shortly before offered other false articles to other pawnbrokers. The learned judge admitted the evidence, but as the cases relied on by the prosecution were all cases either of forgery or uttering counterfeit coin, he reserved the question whether on such a charge as this such evidence was admissible for the purpose of proving guilty knowledge." The evidence was held by a unanimous court, and upon full argument, to be competent, Lord COLERIDGE, C. J., saying: "It seems clear upon principle that when the fact of the prisoner having done the thing charged is proved, and the only remaining question is, whether at the time he did it he had guilty knowledge of the quality of his act or acted under mistake, evidence of the class received must be admissible. It tends to shew that he was pursuing a course of similar acts, and thereby it raises a presumption that he was not acting under a mistake." In the very recent case of *Tarbox* v. *State*, 9 Cincinnati Law Bulletin 24, the defendant was indicted for obtaining money by a false pretence, and it was held by the Supreme Court of Ohio that it was proper to show a similar offence in Detroit, Michigan, the court saying: "The decisions are uniform to the effect that, where *scienter* is an element of the crime charged, previous offences necessarily involving such guilty knowledge are admissible." The court cited the cases of *Farrer* v. *State*, 2 Ohio St. 54; *Bainbridge* v. *State*, 30 Ohio St. 264; *Shriedley* v. *State*, 23 Ohio St. 130. Wharton says: "Where the *scienter* or *quo animo* is requisite to, and constitutes a necessary and essential part of the crime with which the person is charged; and proof of such guilty knowledge, or malicious in-

tention, is indispensable to establish his guilt in regard to the transaction in question, testimony of such acts, conduct, or declarations of the accused, as tend to establish such knowledge or intent, is competent; notwithstanding they may constitute in law a distinct crime." 1 Whart. Crim. Law, section 649. Professor Greenleaf lays down a like rule, and says: " The like evidence of acts and declarations at other times, in proof of the character and intent of the principal fact charged, has been admitted in trials for arson, robbery, libel, malicious mischief, forgery, conspiracy, and other crimes." 3 Greenl. Ev., section 15.   In the case of *Regina* v. *Richardson*, 2 F. & F. 343, evidence of other acts of embezzlement than the one charged was held admissible, the court saying: " I am clearly of opinion that this evidence is admissible.  There is no principle of law which prevents that being put in evidence which might otherwise be so, merely because it discloses other indictable offences." Still stronger is the case of *Reg.* v. *Geering*, 18 L. J. Mag. Cas. 215, where, in a prosecution for murder of a husband by a wife, evidence that other members of her family had died from poisoning in a manner similar to that of the husband, was held competent. Our own cases apply the general rule to prosecutions for uttering counterfeit money. *McCartney* v. *State*, 3 Ind. 353 ; *Bersch* v. *State*, 13 Ind. 434. The first of these cases is directly in point as to the admissibility of the declarations made at the time of doing another act. The court, in stating the points made, said: " Whether the court erred in permitting proof of what the defendant said at the time of passing each of said notes, in regard to it.   There was no error in this.   His declarations were a part of the *res gestœ*."   It is firmly settled that in civil cases, where notice or knowledge is an essential element of the issue, evidence of other acts is admissible although constituting distinct causes of action in favor of different persons. *Wooley* v. *Grand Street, etc., R. R. Co.*, 83 N. Y. 121 ; *Pittsburgh, etc., R. W. Co.* v. *Ruby*, 38 Ind. 294 (10 Am. R. 111) ; *City of Delphi* v. *Lowery*, 74 Ind. 520 (39 Am. R. 98).  And as said by Lord COLERIDGE,

"The law of evidence is the same in criminal and civil suits."
*Regina* v. *Francis, supra.*

The case before us is stronger than any I have cited, for
the acts and conduct of the accused were connected with the
fraudulent procurement of the form of the instrument after-
wards moulded into the false token which enabled him to
perpetrate the crime charged against him.

I think the reason of the rule applies with peculiar force
to a case, such as this, of an impostor who goes about the
country imposing upon others by a systematic scheme, of
which the particular act is but one of a 'long series of like
criminal acts performed in the execution of a formed and con-
tinuous design to defraud communities.