## ABBIE L. REDDING, apt., *vs.* MOSES W. REDDING'S ESTATE.

May Term, 1897. '    .

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON and THOMPSON, JJ.

*Handwriting—Opinion—Note—Evidence of Consideration—Similar Offenses—Standards of Comparison.*

The question being whether the notes in suit were signed by the testator, the opinion of one acquainted with his handwriting that they were signed by him, was relevant.

One is deemed to be acquainted with the handwriting of another when he has seen him write, or when he has received letters or other documents purporting to be written by that person in answer to letters or other documents written by the witness or under his authority and addressed to him; or when he has seen letters or other documents purporting to be that person's handwriting and has afterwards personally communicated with him concerning their contents, or has acted upon them as his, he knowing thereof and acquiescing therein; or when the witness has so adopted them into his business transactions as to induce a reasonable presumption and belief of their genuineness; or when in the ordinary course of business documents purporting to be written or signed by that person have been habitually submitted to the witness.

The words, "for value received," contained in a promissory note, are themselves evidence of a consideration, if the note be found to be genuine.

There was no evidence of a consideration in the fact that the maker, being under no legal obligation to the woman from whom he had been divorced, still entertained for her a lingering regard and frequently expressed an intention to provide for · her, nor in the fact that immediately after the execution and delivery of the notes he said to another that he had settled with her, for in the circumstances the words plainly meant nothing more than that he had closed the matter.

There being no evidence of a consideration outside the notes themselves, the court erred in submitting the case as if there were.

As repeatedly declared, this court will not consider objections to testimony which were not raised in the court below.

As bearing on the question whether the testator executed the notes to the plaintiff, it was admissible to show that he expressed an intention to do so as well as that he admitted having done so.

When the nature of an offense is such that its commission carries with it an implication of criminal intent, proof of other similar offenses by the

accused is not admissible for the purpose of showing that he committed the offense in question.

Forgery is of such a nature, and therefore the court rightly excluded testimony relating to forgeries by the plaintiff other than of the notes in suit.

As corroborating the plaintiff's claim, testimony was admissible that the notes were seen in her hands soon after their date.

The court did not err in admitting as standards of comparison exhibits found to have been written or signed by the testator, though some were unsigned and some undated and some were written before the testator's health began to fail and his hand to change as it did before the date of the notes in question.

APPEAL from an order of the Probate Court for the District of Franklin, accepting the report of commissioners upon the estate of the appellee disallowing the claim of the appellant. Declaration in assumpsit, with specification of two notes, each for twelve hundred dollars, dated December 11, 1891. Plea, the general issue, with notice denying the execution of the notes and the genuineness of the signatures. Trial by jury at the April Term, 1896, Franklin County, *Start*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The answers to direct interrogatories 12 and 13 in Roe's deposition, to the admission of which the defendant excepted, were, in substance, that the testator at different times expressed to the witness his intention to provide for the plaintiff by giving her his notes to the amount of two thousand, two thousand five hundred, or three thousand dollars, and afterwards informed the witness that he had given her notes, without stating their amount.

The answers to cross-interrogatories 8 and 15 in the same deposition were to the effect that the witness learned from conversation with the plaintiff and the testator at the time of the divorce proceedings in New York that the cause assigned was the plaintiff's adultery with one Bigelow and that Bigelow admitted his guilt. In his answer to cross-interrogatory 16 the witness denied hearing the plaintiff say that Bigelow was a fool to admit it, and in his answer

to cross-interrogatory 17 denied having stated otherwise, to his knowledge, in an affidavit used in the New York litigation. To the exclusion of these answers the defendant excepted.

*C. G. Austin* and *Wilson & Hall* for the defendant.

*Farrington & Post, H. A. Burt, Ballard & Burleson* and *D. W. Steele* for the plaintiff.

ROWELL, J. The question being whether the notes in suit were signed by the testator, the opinion of one acquainted with his handwriting that they were signed by him was relevant.

One is deemed to be acquainted with the handwriting of another person when he has seen him write, though but once, and then only his name; or when he has received letters or other documents purporting to be written by that person in answer to letters or other documents written by the witness or under his authority and addressed to him; or when he has seen letters or other documents purporting to be that person's handwriting, and has afterwards personally communicated with him concerning their contents, or has acted upon them as his, he knowing thereof and acquiescing therein; or when the witness has so adopted them into business transactions as to induce a reasonable presumption and belief of their genuineness; or when in the ordinary course of business documents purporting to be written or signed by that person have been habitually submitted to the witness. Stephen's Dig. Ev. Art. 57; I Greenl. Ev. § 577; I Whart. Ev. § 708; *Patterson,* J., in *Doe d. Mudd* v. *Suckermore,* 5 Ad. & E. 703.

The testimony brought the witness Stranahan fully within this rule; therefore the court properly found therefrom that he was sufficiently acquainted with the handwriting of the testator to render him competent to testify his opinion of whether or not the notes in suit were signed by him.

The notes were properly admitted in evidence, notwith-

standing the objection that there was no evidence in the case to show that they were given for a consideration; for, as the court held, the words, "for value received," therein contained, were themselves such evidence, if the notes were found to be genuine. *Stevenson* v. *Gunning's Est.* 64 Vt. 601, 614.

If there was any other evidence before the jury tending to show consideration, it is contained only in this: The plaintiff was once the wife of the testator. After living together eight years in New York City, he there obtained a divorce from her on the ground of adultery. Two years thereafter, in 1888, he married another woman, with whom he lived till his death in 1892. Soon after this marriage, the plaintiff commenced proceedings against him in New York, to annul and set aside said decree of divorce, for that it was obtained by fraud and perjury and without her knowledge; and prayed that a divorce be granted to her, and for alimony. At about the same time she brought a bill in chancery against him in Franklin County in this State, setting forth her proceedings in New York, and praying that he be enjoined from disposing of his property here pending the litigation there, and that the same be ultimately decreed to her; and an injunction was granted accordingly.

The litigation in New York was vigorously prosecuted, and terminated disastrously to the plaintiff in the summer or fall of 1891, and the bill in chancery in Franklin County was dismissed by agreement, with costs, which the plaintiff paid, by her attorneys, on December 8, 1891, three days before the notes in suit bear date.

After the granting of the divorce in 1886, the plaintiff returned to Vermont, her former home, and resided with her parents on a farm in Highgate owned by the testator, who continued his business in New York, but spent his summers in Vermont. He returned to New York in the latter part of November, 1891, and remained there till the next spring, when he returned to Vermont, where he soon died.

The testimony on the part of the plaintiff tended to show that she went to New York on or about November 28, 1891, and that on the 11th day of December following, the testator executed and delivered to her the notes in suit.   'She introduced one Rawson as a witness, who testified that on said last-mentioned day, he accompanied the testator at his request, to a *café* in New York, where he found the plaintiff, sitting at a table; that the testator left him two or three tables away, and went and sat at her table, where he remained fifteen or twenty minutes, and where the witness saw him write and deliver to the plaintiff the notes in suit, but saw nothing else pass; that thereupon he and the testator left the *café* together, and when upon the street the testator said: "I have settled that matter.   Now that woman is taken care of;" that in response to an inquiry by the witness, he further said: "Well, I didn't give her what I promised you; I could not afford it; I made her two notes of twelve hundred dollars each, for one year and two years."   The witness further testified that the testator had previously told him that the plaintiff deserved at least five thousand dollars, because she had earned it.

The plaintiff introduced other testimony tending to show that often, from the time of the divorce to his death, the testator manifested a friendly regard for her, and frequently said that he intended to make provision for her, as she had been his wife and was kind to him, that she should not come to want, and talked about different ways of making such provision.

There is absolutely nothing in all this that tends to show consideration; but on the contrary its tendency is to show that these notes were a mere gratuity, executed for the purpose of satisfying what the testator seemed to regard as a moral obligation resting upon him to make provision for the woman who had been his wife, and for whom, in spite of her faults, as judicially determined, he still had a tender eeling and a lingering regard.

There is nothing in the word "settled," found in the testator's statement to Rawson, "I have settled that matter," that is, in the circumstances,. suggestive of a consideration; for it is manifest that the word was not used in the sense of *paid*, but only in the sense of having brought the matter to a conclusion. This is all the more manifestly so when we consider, as we must, that there is nothing in the case to show that the testator was under any legal obligation to the plaintiff at any time after the divorce.

Indeed the plaintiff's counsel do not claim in their brief that there was any evidence to show consideration except the notes themselves. They did, it is true, suggest in argument that the dismissal of the bill in chancery may have constituted a consideration. But this is mere conjecture, and not very well founded at that, seeing that that suit could no longer serve the plaintiff, and that she paid the costs.

But the plaintiff's answer to the defendant's exception to the charge on the subject of consideration is, that although the defendant claimed on trial that there was no consideration, it introduced no testimony tending to support its claim, wherefore the court might well have told the jury that if it found that the notes were genuine, as upon their face they imported a consideration, and as there was no testimony to contradict that import, the plaintiff was entitled to recover, and that therefore if the court did err in charging that the jury might consider certain other evidence on the question of consideration, it was harmless. But the trouble is, there was no other evidence that tended to show consideration, whereas the court submitted the case just as though there was, which was error, and manifestly not harmless, and that was the point of the defendant's exception. Thus, the court told the jury what, in law, constitutes a valuable consideration, namely, a right, an interest, a profit, or a benefit to one party, or a forbearance,

loss, or responsibility given or suffered by the other party, and then went on to say, that while the notes on their face purported to have been given for a valuable consideration, yet that was not conclusive, but the jury must consider all the evidence in the case bearing on the question of consideration, that tending to show consideration as well as that tending to show no consideration, and must consider not only the notes themselves, but the testimony of what the testator said about his relations with the plaintiff and what he intended to do for her; must consider whether there was any obligation existing on his part to give her anything, and what was done at and about the time the notes were executed, and also, the testimony upon the subject of what seemed to pass between them, or the want of anything passing between them, on that occasion.

This was misleading. The jury might have understood from it, and most likely did understand, that if the testator's relations with the plaintiff were friendly, and he had frequently said he was going to make provision for her, both of which the testimony on her part tended to show, that that was evidence tending to show an obligation on his part and consideration, which was not such evidence, in the circumstances, as we have said.

Then as to what the court said about the jury's considering the testimony on the subject of what seemed to pass between the plaintiff and the testator, or the want of anything passing between them, when the notes were given. If this means, as we construe it to mean, inasmuch as the court was then addressing itself solely to the question of consideration, that the passing or not passing of that something would tend to show or not to show consideration, as the fact was found to be, it was misleading; for the testimony does not show that anything then passed or seemed to pass but the notes themselves, and the only witness who testifies to what took place on that occasion says that he saw nothing else pass.

Against the objection of the defendant on the sole ground that it was out of time, the court, as matter of discretion, allowed the plaintiff to show in rebuttal that the testator had frequently said he intended to make pecuniary provision for her.

The discretionary action of the court nullified that objection, but it is now objected that the testimony was not relevant to show consideration. This is kicking "against the goad," for it has been decided over and over that in this court the party excepting to the admission of evidence is confined to the precise objection made below.

The answers to direct interrogatories 12 and 13 in Roe's deposition were properly admitted, as they tended to show that the testator gave the notes. Direct interrogatory 23 elicited nothing but the repetition of an admissible statement made in answer to interrogatory 12.

Cross-interrogatories 8, 15, and 16, and the answers thereto, were properly excluded, as they concern immaterial matters. Cross-interrogatory 17 and the answer thereto were also properly excluded, as it was an attempt to contradict the deponent in respect of said immaterial matters, which the cross-examiner could not do.

When the nature of an offense is such that its commission carries with it an implication of criminal intent, proof of other similar offenses by the accused is not admissible for the purpose of showing that he committed the offense in question. *Strong* v. *The State*, 86 Ind. 208: 44 Am. Rep. 292; *State* v. *Lapage*, 57 N. H. 245: 24 Am. Rep. 69; *Commonwealth* v. *Jackson*, 132 Mass. 16.

Forgery is of such nature, and therefore the court rightly excluded cross-interrogatories 42 and 43, and re-cross interrogatories 1, 2, 3 and 4, as they related to forgeries by the plaintiff other than of the notes in suit.

Cross-interrogatory 44 sets out in full a long affidavit given by the deponent for use in the proceedings to set aside the decree of divorce, and the defendant claims that it has a

direct tendency to contradict and impeach the deponent; but as counsel point out nothing as having such tendency, and as we see nothing having it as to anything material, we hold that there was no error in excluding the question.

The testimony of Jennison, that he saw the notes in the hands of the plaintiff soon after their date, was relevant, as bearing on the question of their earlier existence, and therefore corroborative of the plaintiff's claim in that behalf.

The exceptions to the exclusion of questions to Rawson concerning articles in certain New York newspapers and an article in the St. Albans Messenger, have not sufficient substance to merit discussion.

The question to Rawson about his advising the testator in the latter's office not to see the plaintiff, who was in the city, was irrelevant, and properly exclued.

The evidence tended to show that from 1889 the testator's health was poor, and that his handwriting materially changed. The plaintiff offered divers exhibits in evidence as standards of comparison of hands. To some the defendant objected that they bore no date; to some, that they were written before 1889; to some, that they bore no signature; to some, that there was nothing to show when they were written; and to some, without stating the ground, as far as appears. The court found that they were all written or signed by the testator, and admitted them, in which no error is apparent.

The fact that the testator's hand materially changed from 1889, went only to the weight of the standards written or signed before that time, not to their competency. That some bore no date, did not render them inadmissible, and it does not appear that there was nothing to show when they were written. Nor was it a valid objection that some bore no signature, as they were written by the testator, for that made them competent standards, especially as plaintiff claimed that the bodies of the notes in suit were written by him.

The petition for a new trial on the ground of surprise and newly discovered evidence is not sustained.

*Judgment reversed, said petition dismissed with costs, and cause remanded.*.