THERESA M. DIONNE v. AMERICAN EXPRESS COMPANY.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed July 2, 1917.

*Common Carriers—Obligation to Transport Goods—Hepburn Act—Acceptance by Carrier—Receipt or Bill of Lading—Express Companies—When Liability as Common Carrier Commences—When Loss Falls on Company—Witnesses—Cross-examination—Harmless Question and Answer—Re-direct Examination—Discretion of Court—Evidence—When Inadmissible—Rules and Regulations—Charge to Jury.*

The transportation of goods upon tendering to a common carrier its proper charges, is, as regards the carrier's own line, a service to which the shipper is entitled as of right, and not a matter depending upon negotiation and agreement; and in assuming the extended liability for shipments over connecting lines under the provisions of the Hepburn Act the nature of the carrier's relation to the public remains the same.

There may be an acceptance of goods for shipment by an agent of an interstate carrier without the giving of a receipt or bill of lading, as required by the Hepburn Act.

Where goods delivered to an express company for transportation and accepted by it are destroyed by fire, while in a railroad station, where they had been placed for the convenience of the express company, and not to await further instructions by the shipper, the loss falls on the express company, because its liability as a common carrier has attached.

In an action against an express company for the loss of goods delivered to it by plaintiff for carriage, where plaintiff testified on cross-examination that she did not ask for a receipt, it was not error to permit her, on re-direct examination, to give the reason why she did not do so; and the answer was harmless, because both the fact and the explanation were immaterial.

It was within the discretion of the trial court to allow plaintiff to show that, when one of plaintiff's witnesses arrived in town to attend the trial, he met defendant's agent and told him that he wanted to find plaintiff's counsel and that thereupon the agent took him to the office of defendant's counsel.

In an action against an express company to recover damages for the loss of goods delivered to it for shipment for which no receipt was taken by the shipper, evidence offered by defendant that its agent never accepted express matter for transportation without issuing a receipt for the same to the shipper or the shipper's agent was properly excluded.

When there is a question whether some duty required by a rule or regulation has been done, the rule or regulation is admissible in evidence as tending to increase the probability that the thing required was done.

In an action against an express company to recover for the loss of goods delivered to it for transportation, for which no receipt had been given to the shipper, where the evidence of defendant's agent was that the goods were not delivered for transportation but were held to await instruction to be sent the next day by the shipper, a rule of the company forbidding its agents to accept goods for transportation without giving a receipt therefor was not admissible as increasing the probability that the agent's version of the transaction was correct, because it forbade acceptance for the purpose testified to by the agent.

Charge examined, and *held*, that, though the trial court might have presented the matter more fully to the jury, the defendant was not harmed thereby.

CASE against defendant as a common carrier. Plea, the general issue. Trial by jury at the December Term, 1915. Caledonia County, *Stanton*, J., presiding. Verdict and judgment for plaintiff. Defendant excepted. The opinion states the case.

*Simonds, Searles & Graves* for defendant.
*Porter, Witters & Harvey* for plaintiff.

MUNSON, C. J. The plaintiff seeks to recover the value of a box of merchandise which was destroyed by the fire which burned the railroad station at Sheldon Junction in the night of the 7th of September, 1914. The box was left on the station platform in the afternoon of that day for shipment to Plattsburg, N. Y., shortly before the arrival of the 3:18 train for St. Albans. Another train carrying express left for St. Albans at 8:25 p. m. The evidence was conflicting as to what passed between the plaintiff and defendant's agent regarding the ship-

ment.   No receipt or bill of lading or other memorandum of contract was issued by the agent.   The defendant moved unsuccessfully for the direction of a verdict on several grounds, of which the only one argued is the want of a receipt or bill of lading.

The Hepburn Act, so called, enacted June 29, 1906, in amendment of the Interstate Commerce Act of February 4, 1887, provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it, * * *".   Section 10 of the act of 1887 provides for the punishment by fine of any common carrier, and in the case of a corporation, of any officer, agent or person acting for such corporation, who shall wilfully do or permit anything in this act prohibited or declared to be unlawful, or "shall wilfully omit or fail to do any act, matter, or thing in this act required to be done * * *".   The defendant claims that these provisions require that any acceptance of goods for transportation, without the issuance of a receipt or bill of lading, be treated as the act of the carrier's servant and not as the act of the carrier; and cites in support of this view the statement in Section 11 of Story on Agency that: "Although a person may do an unlawful act, it is clear that he cannot delegate authority to another person to do it."

The enactment which includes this provision is a regulation of the interstate business of common carriers, and penalties are imposed on the carrier to secure its compliance with the law. The general purpose of the statute is the protection of the public.   No duty is imposed on the shipper in connection with the shipment of his goods.   The acceptance of the goods for transportation without issuing a receipt or bill of lading therefor is illegal only as to one of the parties.   The transportation of goods upon tendering to the carrier its proper charges is, as regards its own line, a service which the shipper is entitled to as of right, and not a matter depending upon negotiation and agreement. In assuming the extended liability for shipments over connecting lines under the provisions of this statute, the nature of the carrier's relation to the public remains the same.   The rules which determine the legality of ordinary contract undertakings are not applicable.

The effect of this statute was considered in *Morrison Grair*.

*Co.* v. *Mo. Pac. R. R. Co.*, 182 Mo. App. 339, 170 S. W. 404, and there it was said: "If the carrier chose to accept and begin the transportation of goods without issuing a bill of lading, it would be violating the act referred to, but the relation of shipper and carrier would exist none the less." In *International Watch Co.* v. *Delaware, Etc., R. Co.*, 80 N. J. Law 553, 78 Atl. 49, it was claimed that this provision did not impose a liability upon the initial carrier unless such carrier should issue a receipt or bill of lading for the property received and the court characterized the claim in this language: "This contention in substance is that, although the defendant upon receipt of these goods for shipment, failed in its duty to issue a receipt or bill of lading therefor, it by reason of such failure, escaped the liability which would have rested upon it had it performed its statutory duty." We think it cannot be said that there can be no acceptance for shipment by the agent binding upon the company unless a receipt or bill of lading is given. So it will be necessary to examine the evidence bearing upon this point.

A truckman testified that he took a box for the plaintiff from the fair ground to the station, and left it on the station platform. The plaintiff testified that the box containing the goods sued for was about ten feet long and eight feet wide; that she put tags on an end and side containing the direction "Plattsburg, N. Y., sent by American Express"; that the box was on a truck at the station when she got there shortly before three o'clock; that the express agent was standing near it, and she spoke to him about it, and he said he would attend to it; that he told her he didn't have time to get it off on that train, and she asked him if he would change the address if she should 'phone him to do it when she got to St. Albans, and he said he would; that she did not so 'phone; that the agent did not ask her to pay charges, and she did not ask for a receipt. The express agent testified that the plaintiff came to the station that afternoon, and told him she would have a shipment going either to Plattsburg or St. Johnsbury, and that she would give him instructions the following day, by telephone or letter, which place she would ship to, and said nothing else; that he told her he couldn't do anything for her at that time; that he did not see her box, and she did not tell him where it was; that she did not ask whether the box could go on that train; that he did not weigh the box, nor make out a way bill for it, and did not accept any box for shipment; that

after the fire you could see from some of the stuff where the box had been; that he and his helpers took into the station the boxes that were burned there.

This evidence tended to show the delivery and acceptance of the plaintiff's goods, to be shipped as soon as practicable in the usual course of business. For anything that appears they might have been shipped by the evening train, instead of being left in the station where they were destroyed. If placed in the station solely for the defendant's convenience, and not to await further orders, as the plaintiff's testimony tended to show, the defendant's liability as a carrier commenced at once, and the loss falls on the defendant. So there was a case for the jury, and the motion for a verdict was properly overruled.

Defendant's counsel drew from the plaintiff on cross-examination the fact that she did not ask for a receipt. Her counsel was permitted to ask her in re-direct examination why she did not, and she said it was because he was busy and she knew that he couldn't weigh the box and give the receipt. This was not error. Moreover, the answer was harmless; for both the fact and the explanation were immaterial.

During the cross-examination of the express agent, and for the purpose of showing the interest and feeling of the witness, plaintiff's counsel was permitted to pursue a line of inquiry which tended to show that the witness went to the station to meet the train on which the plaintiff's witnesses came in, and said to Rice, the truckman, that he thought perhaps he wouldn't know where to go, and that he would come down and tell him, and thereupon took him to the office of defendant's counsel. In connection with this, plaintiff's counsel was permitted to show by Rice that when the express agent met him, witness spoke of wanting to find plaintiff's counsel, and that the agent took him to the office of defendant's counsel. This was a matter entirely within the discretion of the trial court.

The defendant offered to show by the agent "that he never accepted express matter for transportation without issuing a receipt for the same to the shipper or the agent of the shipper," and the evidence was excluded. The judges are agreed in saying that the exclusion was proper on the case presented. It is considered by a majority that this was no more than an offer to show the station agent's custom or business habit, and that under our cases this was inadmissible. *Scott* v. *Bailey,* 73 Vt.

49, 50 Atl. 557; *Aiken* v. *Kennison,* 58 Vt. 665, 5 Atl. 757; *Clark* v. *Smith,* 72 Vt. 138, 47 Atl. 391; *State* v. *Wilkins,* 66 Vt. 1, 28 Atl. 323. See, further, *Lucia* v. *Meech,* 68 Vt. 175, 179, 34 Atl. 695; *Ware* v. *Childs,* 82 Vt. 539, 73 Atl. 994; *Russ* v. *Good,* 90 Vt. 236, 97 Atl. 987.

The defendant offered certain instructions contained in a book of rules and instructions issued by the defendant for the guidance and use of its employees only; which instructions forbade the acceptance of any shipment offered for transportation with a request that it be held for futher instructions, and required that a receipt be given for every article at the time it was received, whether asked for or not, and required further that a shipment be refused if the shipper refused to accept the receipt, or if, when shipment was called for, there was no one present to accept a receipt. These instructions were offered, first, to show that the agent could not bind the company by accepting the box without giving a receipt, and, second, to corroborate the agent's testimony that he did not accept the plaintiff's box for shipment. The evidence was excluded, and an exception allowed on each ground. The first point is sufficiently covered by what has already been said. We treat the second of these exceptions as having reference to all the agent's testimony bearing upon the question of acceptance, and not simply to his answer corresponding to the terms of the offer.

When there is a question whether some duty required by a rule or regulation has been done, the rule or regulation is received in evidence as tending to increase the probability that the thing required was done. There is no question here as to what the agent did with the plaintiff's box. He did not send it on the 8:25 train, but put it in the station. So this is not the case of evidence offered in corroboration of a claim that a certain specific act was done. The issue depended upon the quality of the act done, and its quality was not to be determined by the agent's intention or understanding, but from a consideration of the attending statements and circumstances. If the plaintiff's testimony is correct, the box was ready for shipment on the evening train. If the agent's testimony is correct, it was held to await instructions to be sent the following day. So if the rules were admissible here, they were admissible as increasing the probability that the agent's version of what passed between him and the

plaintiff was true.  But the rule did not have that tendency, as it forbade acceptance for the purpose testified to by the agent.

Early in the introduction of the defence counsel indicated their claim that the defendant could be held liable only as a warehouseman, and one ground of the motion for a verdict was that there was no evidence that the goods were delivered to and accepted by the defendant in any other capacity than as a warehouseman.  The defendant requested instructions to the effect that if the goods were held at the request of the plaintiff in order that something further might be done to prepare them for transportation or to await further orders before shipment, the defendant's liability during the detention was only that of a warehouseman, and that a warehouseman is not liable for a loss by fire which occurs without his fault or neglect.  There was no evidence or suggestion during the trial that the fire was due to any want of care on the part of the defendant.  The court charged in substance that the liability of the defendant as a common carrier was that of an insurer of the safety of the goods, but that if the goods were held after delivery for the accommodation of the plaintiff, that something further might be done, the liability of the defendant during such detention would be that of a warehouseman only, and that a warehouseman is not liable for anything more than an exercise of ordinary care.  The court went no further; and the defendant claims that the failure to instruct the jury that a warehouseman is not liable for loss by a fire which occurs without his fault, was a serious error.  The court might well have presented the matter more fully, but we think the defendant has not been harmed by the incompleteness complained of.

*Judgment affirmed.*