In re Estate of 'Andrew J. Barron.
Mary A. Freeman, Claimant.

May Term, 1918.

Present: Watson, C. J., Powers, Taylor, and Miles, JJ.

Opinion filed November 19, 1919.

*Bills and Notes—Evidence—Opinion Evidence—Handwriting—
Standard of Comparison—Harmless Error—Excepting
Party Putting in Similar Evidence—Cross-examination—
Court's Discretion—Immaterial Evidence—Declarations of
Agent—Parol Evidence that Maker Signed Note as Agent—
Instructions—Presumption of Innocence—Credibility of
Party as Witness—General Exception.*

In an action on a note alleged to have been signed by the defendant's
intestate, a witness, who for several years saw letters purporting
to be personally signed by the intestate, and, in the discharge of
his duties, answered them and acted upon them as the intestate's
letters, of which the latter must have known and acquiesced there-
in, is qualified to testify that in his opinion the signature to the
note is in the handwriting of the intestate.

In such case, the signature to official reports which the witness testi-
fied, in his opinion, to be in the handwriting of the intestate, are
admissible as standards of the latter's signature.

Error in the admission of evidence is rendered harmless by the other
party later putting in evidence of the same subject-matter.

It is in the court's discretion to permit a witness on cross-examination
to be asked, for the purpose of affecting his credibility, whether he
had been convicted of selling liquor without a license.

In such case, it not appearing otherwise, the Court will consider the
ruling excluding such evidence as made in the trial court's discre-
tion.

Declarations of an agent were properly excluded, it not appearing when
the declarations were made nor that they were made while the
agent was performing some act within the scope of his agency
and with reference to the act which was. being done.

In an action on a priest's note, defended on the ground that he did not
sign it, and where no claim was made against the parish, evidence

that he did not report the note as an indebtedness of the parish was properly excluded.

Where a note on its face appears to be the personal undertaking of the party signing it, in a suit on the note against his estate, it cannot be shown by parol evidence that he in fact signed it as agent for a third person, to the knowledge of the payee.

In an action on a note, defended on the ground of forgery, an instruction, that the plaintiff was presumed to be innocent of the crime of forgery, and that this presumption was a piece of evidence in her favor to be weighed in connection with the other evidence in determining whether the intestate signed the note which was to be determined on the whole evidence, sufficiently excluded the idea of conclusiveness in the presumption of innocence.

In such case, an instruction to the jury, that "It is immaterial when this note was signed, if it was signed by A. J. Barron, the defendant's intestate," was without error.

Where the defendant called the plaintiff as a witness, a general exception to an instruction to the jury, that the defendant was not bound by her testimony, "but her testimony is to be weighed as that of all witnesses called in behalf of the defendant, giving it its due weight," does not cover the specific claim that the instruction disregarded the plaintiff's interest and bias, as an adverse party, in testifying.

APPEAL from the disallowance by the commissioners on the estate of Andrew J. Barron of a claim presented by Mary A. Freeman. Declaration, assumpsit on a note. Plea, the general issue with notice denying the execution of the note. Trial by jury at the December Term, 1915, Bennington County, *Butler*, J., presiding. Verdict and judgment for the claimant. The estate excepted.

*D. A. Guiltinan* and *Holden & Healy* for the estate.

The admissions or declarations of an agent are admissible when shown to have been made in respect to a matter within the scope of his employment or while engaged in the business of his principal. *Barnard* v. *Henry*, 25 Vt. 289; *Taplin & Rowell* v. *Marcy*, 81 Vt. 428; *Hayward Rubber Co.* v. *Duncklee*, 30 Vt. 29; *Baldwin* v. *Doubleday*, 59 Vt. 7.

The rule that interest affects credibility has been applied in a great many instances to the testimony of parties and to that of ordinary witnesses and this right to show the interest of the witness exists independent of statute. Moore on Facts, Chap. 20, Vol. 2, p. 1224; *Hutchinson* v. *Wheeler*, 35 Vt. 330; *Mc-Kindley* v. *Drew*, 69 Vt. 210; *Raymond's Admr.* v. *Rutland Ry. L. & P. Co.*, 90 Vt. 373.

A party does not become his adversary's witness when the latter calls him. *Suter* v. *Page*, 64 Minn. 444, 67 N. W. 67.

*J. J. Enright, F. C. Archibald, J. K. Batchelder,* and *R. E. Brown* for claimant.

WATSON, C. J. The claimant seeks to recover of the estate of A. J. Barron the amount of a promissory note dated January 2, 1909, payable on or before five years after date with interest annually at the rate of five per cent. The note purports to be signed by A. J. Barron, the defendant's intestate. The case came into county court on appeal from the report of the commissioners disallowing the claim against his estate and the order of the probate court approving the same. Defendant pleaded the general issue, and by notice put in issue the execution of the note. A trial was had by jury, resulting in a verdict for the plaintiff, and judgment was entered on the verdict.

The plaintiff's evidence tended to show that prior to January 2, 1909, the intestate had given her two similar notes, one dated January 2, 1899, and one dated January 2, 1904, the second being in renewal of the first, and the note in suit, in renewal of the second.

It appeared that A. J. Barron was the priest of the Roman Catholic Church at Richmond, this State, from 1884 up to about May, 1891, and of the St. Francis de Sales Church at Bennington from 1892 to 1912. He is often referred to by witnesses in giving testimony, and also in this opinion, as "Father Barron."

Rev. Joseph F. Gillis, called as a witness by the plaintiff, testified that he had been stationed at Burlington as a priest of the Roman Catholic Church during the past eighteen and a half years; that shortly after his arrival there he became personally acquainted with Father Barron and occasionally corresponded with him in connection with the witness's duties, about matters referred to in the correspondence; that when there was business to

be transacted, Father Barron wrote concerning it and the answers of the witness went back, which would happen sometimes every week, sometimes once a month, and possibly sometimes not so often; that witness could not say positively that he ever saw Father Barron write; that a record is supposed to be made annually by the priests of the churches of the Diocese of Vermont, and usually is, though once in a while it may happen that a priest does not send in a report; that by a regulation of the church society or organization, blanks for such reports are sent out from the Bishop's house at Burlington, usually in December, to the priests of the diocese who have a parish, and they are supposed to be filled out and returned in the early part of the following January, and when returned they are put on file; that usually the name of A. J. Barron was affixed in handwriting to the letters received from him, though sometimes it was in typewriting; that the witness has no way of saying positively that A. J. Barron signed the letters (signed in handwriting), although it was taken that he did, and the witness supposed in each case that it was the signature; that the witness is so familiar with Barron's handwriting and his signature that he has an opinion as to whether the signature shown him is Barron's signature or not.

The original records of St. Francis de Sales Church at Bennington from 1892 to 1912 being produced in court, the witness testified that they came by mail from Father Barron, at least supposed to come from him at Bennington; that the witness found them in the archives of the diocese, at Burlington, the place where those records are usually kept; that at the time those reports were received at the diocese, the witness was secretary and chancellor of the diocese, and as such, in the performance of his duties, he usually received the letters sent to the Bishop by the different priests, and answered a great many of them. The witness was then shown the reports mentioned for the years from 1892 to 1912, except for the years 1908 and 1911 which contained only typewritten signatures, and was asked to state in whose handwriting the signature A. J. Barron on each one of them is, in his opinion. Counsel for plaintiff stated that if these signatures are proved as in the handwriting of A. J. Barron, he offered them as standards. Subject to exception, the witness answered that in his opinion it is the handwriting of Father Barron. The stated ground of the exception was that there had been no basis laid upon which the witness could give

such testimony, the only witness who can pass an opinion as to the signature upon papers he has not seen written is an expert.

This exception is not well taken.  The testimony of the witness shows that he had seen letters purporting to be subscribed by the intestate in his own handwriting, and that, by way of answering these letters, the witness personally communicated with the intestate concerning the subject-matters thereof and acted upon them as his letters, of which the latter must have known by the answers he received, and acquiesced therein; also, that the reports received from the St. Francis de Sales Church, purporting to be signed in writing by the intestate, were habitually submitted to or seen by the witness in his official relation to the diocese.  Upon this evidence the witness is deemed to be acquainted with the handwriting of the intestate, and there was no error in the ruling made.  *Redding* v. *Redding's Est.*, 69 Vt. 500, 38 Atl. 230; *State* v. *Kent*, 83 Vt. 28, 74 Atl. 389, 26 L. R. A. (N. S.) 990, 20 Ann. Cas. 1334.  Such acquaintance with the intestate's handwriting being shown, the witness was properly permitted, against exception on the same ground, to testify that in his opinion the signature to the note in question (plaintiff's Exhibit 1) is in the handwriting of the intestate.  For this holding, the two cases cited above are full authority.  And the signatures on the reports mentioned, when established by such evidence, could properly be received as standards.  *Rowell* v. *Fuller*, 59 Vt. 688, 10 Atl. 853; *State* v. *Ryder*, 80 Vt. 422, 68 Atl. 652.

What we have said in overruling the exception saved in connection with the testimony of the witness Gillis, and the admission of the records mentioned therein, is controlling as to the similar questions raised in connection with the testimony of the witness Claremont, and the reception of plaintiff's Exhibits 159, 160, 161, and 162, and the latter questions need not be further noticed.

Subject to exception on the ground of incompetency and · irrelevancy, the plaintiff was permitted to show by Mr. Justice Haselton that in 1898 or 1899, some three or four years before his appointment to the bench, he received a draft or check from a life insurance company, payable to the plaintiff for $5,000, and that he handed it to her in his office at Burlington.  It is urged that this evidence was erroneously received.  We may assume this to be so, and yet the defendant was not harmed by it; for

in defence of the action defendant called the plaintiff to testify as a witness in its behalf, and examined her at great length on, among other things, where her money was just before she let the intestate have the $6,000 on the original note.   In that connection and in answer to questions asked by defendant's attorney, she testified that her husband had given her $5,000; that she had the money in her house, in all $11,000; that she received $5,000 from an insurance company the last of December, that Justice Haselton got for her.   Later in the course of the same examination, in answer to further questions, she stated what company paid this insurance money, on whose life it was, and that there was another policy on the same life, in another company (naming it), payable to her.   She further said that she held the draft for $5,000 until the following April, before getting it cashed, calling it money all the time.   The defendant having thus put the foregoing evidence into the case, it is clear that the evidence given by Mr. Justice Haselton, though it be considered as improperly received, was harmless.   *Townshend* v. *Townshend*, 84 Vt. 315, 79 Atl. 388; *Lynch's Admr.* v. *Central Vt. Ry. Co.*, 89 Vt. 363, 95 Atl. 683.

This is also conclusive as to the question raised by the fifth exception.   Edward W. Freeman, the stepson of the plaintiff and called by her as a witness, testified that within two or three years, or three or four years, of his father's death (which occurred in 1901), the plaintiff showed him a certain paper one day on the train going from Burlington to Richmond.   Subject to exception on the grounds that it was immaterial, irrelevant, and incompetent, the witness answered that it was a draft or check, should say right in the neighborhood of $5,000.   He further testified that he did not notice. to whom it was payable, or if he did, he had forgotten.   The defendant moved that this testimony concerning the paper be stricken from the record as immaterial, it not being shown that the draft or check was payable to the plaintiff.   The motion was overruled and exception noted.   Treating this evidence as wrongly received, it was harmless to the defendant for the same reason as was that given by the preceding witness, and the exception is unavailing.   The same thing is true as to the exception to the refusal of the court to strike out the testimony of this witness, to the effect that his father, prior to his death, distributed his estate to his wife and his children, the witness saying in cross-examination that, other

than what was given to himself and to one brother, his knowledge of such distribution consisted in what was said "as we talked matters between ourselves, just as you would family affairs." The only purpose of this evidence was to show that the plaintiff had money at the time when (she says) she made the loan to the intestate. In this instance as in the two preceding, and for the same reason, if error was committed no harm resulted therefrom.

The same witness was asked in cross-examination whether he had been convicted of selling liquor without a license. On objection being made, the evidence was excluded and exception noted. Whether such evidence should be received as affecting the credibility of the witness, was a matter resting in the discretion of the trial court. *State* v. *Shaw*, 73 Vt. 149, 50 Atl. 863; *McGovern* v. *Hays & Smith*, 75 Vt. 104, 53 Atl. 326. And it not appearing otherwise, the ruling will be taken as so made. *Gilfillan* v. *Gilfillan's Est.*, 90 Vt. 94, 96 Atl. 704.

Defendant offered to show by E. C. Bennett that Mr. Enright, the attorney and representative of the plaintiff, said in Bennington prior to the meeting of the commissioners on the intestate's estate, that the plaintiff told him that the intestate came to Richmond about the time of the expiration of the term for which one of the notes was written and paid her in cash five years' interest, and $1,000 on the principal, at the same time giving her a new note for $5,000; and that Enright then had the note in suit in his possession. Exception was saved to the exclusion of the offer. How long prior to the meeting referred to those declarations were made, the offer did not disclose. It may have been days, weeks, or months. Nor did the offer indicate that they were made while Enright was performing some act within the scope of his agency, and with reference to the act which was being done. *Barnard* v. *Henry*, 25 Vt. 289; *Baldwin* v. *Doubleday*, 59 Vt. 7, 8 Atl. 576; *Taplin & Rowell* v. *Marcy*, 81 Vt. 428, 71 Atl. 72; *First Nat. Bank* v. *Bertoli*, 87 Vt. 297, 89 Atl. 359, Ann. Cas. 1917 B, 590.

Defendant offered the parish records which were produced by the witness Gillis for the years 1899 and 1900, for the purpose of showing that Father Barron did not report the original note as an obligation of the parish, and to their exclusion an exception was saved. Counsel then added to the offer, that the reports would show a list of individual owners of listed debts against the

parish, and the total in each case accounted for by individual names, and that this note does not appear among them. Again the offer was excluded and exception saved. These offers seem to have been made because the plaintiff, as a witness in behalf of defendant, stated (in answer to the question as to how she happened to loan the $6,000 to Father Barron in 1898) that "he said he was in debt up to his neck in Bennington and wanted a good deal of money for the parish, he was paying six per cent. for money; he knew I had money, and if I would give it to him he would pay me five per cent." Later, being asked, "At the time you loaned the $6,000, you understood that it was for the use of the Bennington parish?" she stated: "Well, I understood it that way, but of course you don't always take things just right." She testified that the note then given was signed by Father Barron and by Bishop Michaud.

No claim is made against the parish in this action, and whether the original note was reported by Father Barron as an obligation of the parish was immaterial to any issue in the case, and the addition to the offer did not make the evidence any more material. It had no tendency to show that he did not sign the note in question, and was properly excluded.

At the close of the evidence the defendant moved for a directed verdict in favor of the estate, on the grounds that it appeared by the plaintiff's testimony that the original indebtedness was incurred for the benefit of the parish at Bennington, and she was told that the money was for the use of the parish; that the Bishop's signature was on the original note and on the renewal of 1904, and when the note in suit was given she requested Father Barron to have it signed by the Bishop when one should be appointed; that the last two notes were renewals and were not paid. The motion was overruled and exception noted.

Passing over the question whether the agency of the intestate for the parish in this respect could in law be shown by what he said and did at the time of, and in connection with, the negotiations with the plaintiff for the loan of the money, we will assume that in fact he borrowed the money for the parish and that the plaintiff then knew it. Yet the ruling was not erroneous. The undisputed evidence showed that the original note was signed by the intestate and by Bishop Michaud, each in his own name, and there was no evidence tending to show that the instrument contained anything upon its face showing that either was acting as

the agent of the parish. The same is true as to the evidence
bearing upon the form and execution of the first renewal note;
.and as to the note in suit, it purports on its face to be a personal
undertaking, signed by the intestate in his own name, and it
contains nothing showing that in its execution he was acting in
the capacity of agent. The question thus presented is, whether
it is competent for the intestate's estate to discharge itself, on a
plea of nonassumpsit, by proving the contract was really made
by him as agent for the parish, and that the plaintiff knew it
at the time when the note was made and signed. In *Arnold* v.
*Sprague,* 34 Vt. 402, where the suit was on a bill of exchange,
the draft was drawn on the defendant and accepted by him per-
sonally. There was nothing on the face of the draft showing
that he was agent. The court said there could be no doubt that
he was personally liable on the acceptance, though his agency
was in fact known to the plaintiff. In *Bradley* v. *Blandin,* 89
Vt. 542, 95 Atl. 894, it was held that an agent may, if he will,
bind himself in his individual capacity jointly and severally
with his principal. In *Mayhew* v. *Prince,* 11 Mass. 54, the ac-
tion was assumpsit upon several bills of exchange, drawn by the
defendant, by putting his own name to them without any quali-
fication. The defence set up was that the defendant was a
mere agent of another person (naming him), for whose use and
on whose account the bills were drawn. It was held that the
agency under which the defendant acted was a matter between
him and his employer; but that it could not protect him from
the claim of the payees of the bills, who had a right to consider
him as an independent drawer, notwithstanding they may have
known that he was acting as the servant to one of the house on
which the bills were drawn, the court saying it seems to be a
general principle that the signer of any contract, if he intends to
prevent a resort to himself personally, must express in the con-
tract the quality in which he acts. In *Higgins* v. *Senior,* 8 M.
& W. 834, Baron Parke said that in an action on an agreement
in writing, purporting on its face to be made by the defendant,
and subscribed by him, for the sale and delivery of goods, it is
not competent for him, under the plea of nonassumpsit, to prove
that the agreement was really made by him by the authority and
as the agent of a third person, and that the plaintiff knew those
facts; that to allow evidence to be given that the party who ap-
pears on the face of the instrument to be personally a contract-

ing party is not such, would be to allow parol evidence to contradict the written agreement; which cannot be done. In *Jones* v. *Littledale,* 6 Ad. & Ell. 486, Lord Denman lays down the general proposition, "that if the agent contracts in such a form as to make himself personally responsible, he cannot afterwards, whether his principal were or were not known at the time of the contract, relieve himself from that responsibility." To the same effect are the following cases: *Mills* v. *Hunt,* 20 Wend. (N. Y.) 431; *Meyer* v. *Redmond,* 205 N. Y. 478, 98 N. E. 906, 41 L. R. A. (N. S.) 675; *Thomas Gordon Malting Co.* v. *Bartels Brewing Co.,* 206 N. Y. 528, 100 N. E. 457, 461; *Sadler* v. *Young,* 78 N. J. L. 594, 75 Atl. 890; *Hastings* v. *Lovering,* 2 Pick. (Mass.) 214, 13 Am. Dec. 420; *Cook* v. *Forker,* 193 Pa. 461, 44 Atl. 560, 74 Am. St. Rep. 699.

The foregoing holding on the question raised by the motion for a verdict shows that defendant's first and second requests to charge, were unsound in principle, and therefore properly refused; also, that the several exceptions to the charge as given, found under paragraph XI of the printed case, are without force.

Exception was taken to the failure of the court to charge that the presumption of innocence is not conclusive. But in effect the court did so charge. It told the jury that the plaintiff was presumed to be innocent of the crime of forgery, and that this presumption is a piece of evidence in her favor to be weighed in connection with the other evidence in determining whether the signature in question is the signature of A. J. Barron, and that this question is to be determined on the whole evidence. This was sufficient. It so excludes the idea of conclusiveness in the presumption as to leave nothing for argument.

The court charged that "It is immaterial when this note was signed, if it was signed by A. J. Barron, the defendant's intestate." The first clause of this quoted sentence is challenged. Bishop Michaud died on December 22, 1908, the funeral services were on December 29 at Burlington, and the funeral sermon was preached by Father Barron. During her examination by the defendant, the plaintiff testified that the latter came to her house in Richmond the week after Bishop Michaud was buried, she thinks on the 27th or 28th day of December; and in substance that he signed the note in suit on that occasion in the month of December. She further testified that she wrote the original note, ready for signing, and also each of the notes in renewal,

dating the latter the same in month and day as was the original, supposing that was the way to do. Defendant urges that in view of the claim that the note in suit is a forgery, and of the evidence tending so to show, the time *when* the note was signed was of importance, especially since defendant's evidence tended to show that Father Barron performed a marriage ceremony in Bennington on the day of the date of the note, January 2, 1909. There can be no doubt that the part of the charge of which complaint is here made was correct in law, and we think, taking the whole sentence together as it should be, it was in substance what the case called for in view of the claims of the parties and the conflicting evidence bearing on the genuineness of the signature affixed to the note.

In the course of the charge the court referred to the fact that the defendant had called the plaintiff as a witness, adding: "They were not bound by her testimony, but her testimony is to be weighed as that of all witnesses called in behalf of the defendant, giving it its due weight." To that part which stated that her testimony was to be weighed as that of all witnesses called by defendant, an exception was saved. It is argued that what the court there said cannot be understood otherwise than as directing the jury, in weighing the plaintiff's testimony, to disregard her bias and her interest in her own claim in controversy. But looking at the sentence as a whole, this is a strained construction. She was called by defendant (under the statute, P. S. 1596) "to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses," with the right to examine as in the cross-examination of witnesses. She was so examined, and her testimony was to be weighed like that of other witnesses called by defendant, (in the language of the charge,) "giving it its due weight." Evidently this quoted phrase was designed to mean, and does mean when properly understood, the same as though it read, "giving it such weight as under all the circumstances it is fairly entitled to receive." Thus understood, the charge was all that defendant could reasonably ask. *Dravo* v. *Fabel,* 132 U. S. 487, 10 Sup. Ct. 170, 33 L. ed. 421. If the defendant thought that, because of the fact that the witness was the adverse party to the suit, the matter of her interest and bias in giving testimony should be brought more specifically to the attention of the jury, a suggestion to that effect should have been made to the court. In the absence of any such

suggestion, the general exception taken will not be considered as covering this specific claim now put forth. *Magoon* v. *Before,* 73 Vt. 231, 50 Atl. 1070.

*Judgment affirmed.    To be certified to probate court.*

HASELTON, J., having been a witness in the case, did not sit.