STATE *v.* GEORGE LONG.

November Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 5, 1922.

*Criminal Law—Witnesses—Interest, Bias, or Prejudice of Witness—Evidence—Standard for Comparison—Admissions by Respondent—Cross-examination in Discretion of Trial Court—Impeaching Cross-examination—Motive of Another to Commit the Crime—Remote Evidence—Hearsay—Exceptions to Charge Must Be Specific—Error Rendered Harmless by Verdict—Consideration of Grades of Homicide by Jury—Malice Distinguishes Murder from Manslaughter.*

1.  The interest, bias, or prejudice of a witness may always be shown, but not the cause or particulars thereof, except so far as the court, in its discretion, may allow.

2.  On cross-examination of a detective who had been employed by, and had testified for, the State, a question as to how much he had been paid by the State was properly excluded.

3.  In a prosecution for murder, the description by the physician who made the autopsy, of the knots by which the murdered person had been bound and his tying such a knot in the presence of the jury established a sufficient standard with which to compare a similar knot tied by the respondent after the homicide.

4.  A statement made by the respondent before arrest, after having been kept at a hotel several days under observation of officers, and after having been told that his arrest for the crime was to be recommended, and that anything he said might be used against him, but with no threats made or inducements held out to him to get him to make any admissions, was not involuntarily made, so as to be inadmissible.

5.  Admissions and statements by a respondent which, in connection with other evidence, warrant an inference of guilt are admissible in evidence, although they do not amount to a confession.

6.  Whether a statement by a respondent, offered in evidence, was voluntarily made was a preliminary question for the trial court, and, unless it can be said as a matter of law that its decision thereon was wrong, it must stand.

7. The mere fact that the person making the admission is under arrest charged with the crime does not make it inadmissible.

8. While much latitude is allowed in the cross-examination of a witness to show that he is unreliable, biased, or prejudiced, the extent to which it shall be allowed rests largely in the sound discretion of the trial court, whose action will not be revised on review unless an abuse of that discretion appears; and it will be assumed on review, the contrary not appearing, that the court's ruling was made in the exercise of that discretion.

9. The exclusion of the cross-examination of a witness, for the purpose of impeachment, as to his improper relations with a certain girl, resulting in her giving birth to a child soon after the witness left the State, was not shown by the record to be an abuse of discretion.

10. A witness may be cross-examined as to collateral facts which tend to test his accuracy or veracity, but the cross-examiner must be content with the witness' answers, and cannot contradict them by independent proof.

11. While it is always competent for a respondent to give evidence tending to show that another committed the crime of which he is charged, he cannot show merely that another had a motive to commit it.

12. Evidence that shortly prior to the murder, a witness had seen unidentified men, not the deceased's husband or the respondent, standing under trees near the deceased's home, evidently watching for some one, was inadmissible, being too remote.

13. Testimony that during the week before the murder the deceased told the witness that she was followed home on the Saturday night before by a certain man, who was occupying a room at the hotel, near which the body was found, was properly excluded, being hearsay.

14. Exceptions to a charge, to be considered, must be sufficiently specific to have called the point argued to the attention of the trial court.

15. A general exception to an instruction, a part of which is correct, is unavailing.

16. The trial court's statement to the jury of different claims of the State as to the crime was not reversible error, although the evidence did not justify such claims.

17. A case will not be reversed for an error that is rendered harmless by the verdict.

18. One convicted of murder in the second degree or manslaughter cannot complain of an error in the charge on the subject of murder in the first degree.

19. In a murder prosecution there is no hard and fast rule as to the order in which the jury shall consider the grades of homicide of which the respondent can be convicted. It is sufficient if the court correctly states the law, and the jury follows the instructions in reaching a result.

20. The element that distinguishes murder from manslaughter is malice.

INDICTMENT for murder. Plea, not guilty. Trial by jury at the September Term, 1919, Washington County, *Butler, J.,* presiding. Verdict, guilty of murder in the second degree. Judgment on the verdict. The respondent excepted. The opinion states the case.

*J. Ward Carver* and *Alland G. Fay* for the respondent.

*Frank C. Archibald,* Attorney General, and *Fred B. Thomas,* State's Attorney, for the State.

POWERS, J.  On the night of May 3, 1919, Lucinda Broadwell, of Barre, was murdered by strangulation, and her unclad body was found the next morning in a garden just off from Main Street in that city. The respondent was indicted and tried for the crime, and was convicted of murder of the second degree. He seasonably filed exceptions, and brings his case here for review.

[1, 2]  James R. Wood, a detective employed by the State, was a witness for the prosecution, and gave evidence tending to connect the respondent with the crime. It appeared from his testimony that he and several of his assistants had been at work on the case for a considerable time before the respondent's arrest, and he gave some of the details of this work. In cross-examination he was asked if he received pay from the State, and replied in the affirmative. He was then asked how much he was paid, and, objection being made, the question was excluded, and the respondent excepted.

It is always permissible to show the interest, bias or prejudice of one who testifies in court. But the cause or particulars

thereof are not proper subjects of inquiry (*State* v. *Glynn,* 51 Vt. 577; *Bertoli* v. *Smith,* 69 Vt. 425, 38 Atl. 76), except so far as the trial court, in its discretion, may allow. *State* v. *Baird,* 79 Vt. 257, 65 Atl. 101; *Dionne* v. *American Express Co.,* 91 Vt. 521, 101 Atl. 209. It was held in *Taylor* v. *State,* 121 Ga. 348, 49 S. E. 303, that, a witness having testified that he was an employee of the murdered man, the terms of his employment were irrelevant and inadmissible. In *Beauchamp* v. *State,* 6 Blackf. (Ind.) 299, the respondent in a murder case was allowed to show that the son and widow of the deceased had employed counsel to assist the prosecuting attorney; but it was held that the question whether this contract was on a contingent fee or not was properly excluded. In *Ball* v. *United States,* 163 U. S. 662, 41 L. ed. 300, 16 Sup. Ct. 1192, the court permitted counsel for the defendants below, in cross-examination of material witnesses for the prosecution, to ask if they had employed counsel to assist the district attorney, and they admitted that they had; but the court refused to allow them to inquire how much they paid such counsel, and this ruling was sustained. *State* v. *Carroll,* 85 Iowa 1, 51 N. W. 1159, supports the respondent's contention. There were in that case, however, special circumstances casting suspicion on the character and reliability of the detective, and we do not regard the case as a safe precedent to follow. It was said in *White* v. *State,* 121 Ga. 191, 48 S. E. 941, that, when parties charged with crime are confronted with paid detectives as witnesses for the prosecution, they should be allowed the greatest liberality of cross-examination that the law permits. If this statement was intended to mean anything more than that the discretion of the trial court should be liberally exercised in such cases, we cannot approve it. The law does not classify witnesses according to their occupations, nor put detectives or other employees in a class by themselves. They are to be treated in court just as other witnesses are, and the rules applicable to their examination and cross-examination are the same as those applying to persons in other occupations. That the case cited was not intended to mean any more than is above indicated is shown by the result. There, the witness had testified that he was a detective, and was to receive compensation for his services, and that his pay did not depend upon a conviction in the case. It was held that it was not error to refuse to allow the witness to be examined as to the amount of his salary. There was no showing in the case in

hand, nor offer to show, that Wood's pay depended upon a conviction, and the exclusion in question was within the trial court's discretion. The exception thereto is not sustained. There being no error to the exclusion, we have no occasion to consider the effect of the subsequent withdrawal of the objection and the full cross-examination of the witness on the subject involved.

[3] When the body of the murdered woman was found, a white shirt waist was wound tightly around the neck and firmly tied in front in a square knot, which pressed into the neck just above the "Adam's apple." Over this was a very tightly drawn man's handkerchief tied in the back in a square knot. The hands were securely bound behind the back with a piece of cloth torn from the shirt waist tied in a square knot. These knots were untied by Dr. Stone when he made the autopsy, and so could not be produced in court. But the doctor, when on the witness stand, tied a square knot in a piece of cord, explaining that it differed from a similar knot known as a "granny knot" in that the latter would slip, while a square one would not. And he testified that the square knot he exhibited was such a knot as he found on the body. On the Sunday following that on which the dead body was found, the respondent was in Wood's room at Hotel Barre, and Wood's testimony tended to show that he asked the respondent if he could tie a square knot, and he replied that a square knot was about the only knot he could tie; that at Wood's request the respondent then tied knots in three handkerchiefs furnished him for that purpose, describing them as he tied them; that the respondent called one a "square knot," another, "just a knot," and the third as a "slip knot." Thereupon these knots, being identified, were admitted in evidence, subject to the respondent's exception. The only objection made below, and the only argument here advanced in support of this exception, is that, the knots found upon the body not having been preserved, there was nothing with which the knots tied by the respondent could be compared. But this is not so, for Dr. Stone not only described the knots found as square knots, but he tied such a knot in the presence of the jury. It does not appear that Dr. Stone's knot was admitted as an exhibit, but the jury saw it, and had at least a mental standard with which to compare the respondent's knots. The only significance there was in this evidence lies in the fact that a knot tied by the respondent was the same kind of a knot as was found on the body.

No peculiarity in the making of square knots was claimed or sought to be shown. The jury could easily tell whether the respondent's knot was like Dr. Stone's, and, if so, it was like those on the body. In principle, the question is like one involved in *Barnet* v. *Norton,* 90 Vt. 544, 99 Atl. 238, where we held that if there was evidence tending to show that a paper offered was like the paper in question, it was admissible. The exception is without merit.

[4-7] . On the occasion just referred to, at Wood's request, officers hunted up the respondent and brought him to the hotel. He was not arrested, but was kept there under constant observation of the officers for three days and nights. Wood then told the respondent that he was convinced of his guilt and had decided to recommend his arrest for the crime. The evidence tended to show that the respondent was told by Wood and the officers that anything he said might be used against him and that no threats were made or inducements held out to him to get him to make any admissions. He finally made a statement which was taken by a stenographer, a transcript of which was offered in evidence in connection with the testimony of the stenographer. This was objected to, on the ground that the respondent was practically under arrest at the time, and therefore the statement was not voluntary. The objection was overruled, the statement was admitted, and the respondent excepted. The general proposition that admissions and statements which, in connection with other evidence, warrant an inference of guilt, are admissible in evidence, though they do not amount to a confession, is not, and cannot be, disputed. But it is argued that it must first be shown that they were voluntary. As the case is presented, we are not called upon to consider the plain distinction in the law of criminal evidence between admissions and confessions. Nor need we inquire whether or not the respondent has invoked rules which apply to the latter, but not to the former. We may assume, as counsel have, that to make this statement admissible it was necessary for the State to show that it was voluntarily made. This was a preliminary question addressed to the trial court, and, unless it can be said as a matter of law that its decision thereon was wrong, it must stand. *State* v. *Walker,* 34 Vt. 296; *State* v. *Carr,* 53 Vt. 37; *State* v. *Day,* 55 Vt. 510; *State* v. *Gorham,* 67 Vt. 365, 31 Atl. 845. The mere fact that the person making the admission is under arrest charged with the crime does not make

it inadmissible.  *Cox* v. *People,* 80 N. Y. 500; *Franklin* v. *State,* 28 Ala. 9; *People* v. *Abbott,* 66 Cal. xviii, 4 Pac. 769; *Com.* v. *Pierce,* 140 Mass. 276, 5 N. E. 494.  And so are our own cases. In *State* v. *Gorham, supra,* the confession admitted was made while the respondent was not only under arrest, but in chains. While in *State* v. *Tatro,* 50 Vt. 483, it was in effect held that a confession procured from a respondent then in solitary confinement, and chained to the floor, under a promise by his jailer that if he confessed he would be unchained and allowed to associate with the other prisoners, was not to be excluded on account of the circumstances stated.

[8, 9]  One Eddie Barron was an important witness for the State.  As already seen, a man's handkerchief was found tightly knotted about the murdered woman's neck.  This handkerchief bore a laundry mark, which was identified by the owner of a laundry in Barre as that of this witness.  Barron identified the handkerchief as similar to one he had loaned to the respondent the last of January or first of February before the homicide.  It was not disputed that the witness was out of the State at the time of the murder.  During his cross-examination, for the purposes of impeachment, the respondent sought to question him about his relations with a certain girl in Barre, and to show that they were such that the birth of a child resulted soon after Barron left the State.  This line of inquiry was excluded, and the respondent excepted.  A reasonable opportunity to show in cross-examination that a witness is unreliable, biased, or prejudiced is a matter of right (*Com.* v. *Russ,* 232 Mass. 58, 122 N. E. 176), and much latitude is allowed in this line of cross-examination.  Nevertheless the extent to which it shall be allowed to proceed rests largely in the sound discretion of the trial court, whose action will not be revised here unless an abuse of that discretion appears.  *State* v. *Fournier,* 68 Vt. 262, 35 Atl. 178; *State* v. *Slack,* 69 Vt. 486, 38 Atl. 311; *State* v. *Shaw,* 73 Vt. 149, 50 Atl. 863; *Hathaway* v. *Goslant,* 77 Vt. 199, 59 Atl. 835; *State* v. *Pierce,* 88 Vt. 277, 92 Atl. 218; *In re Barron's Est.,* 92 Vt. 460, 105 Atl. 255.  The contrary not appearing, it will be taken that this ruling was made in the exercise of that discretion. *Gilfillan* v. *Gilfillan's Est.,* 90 Vt. 94, 96 Atl. 704; *Slack* v. *Bragg,* 83 Vt. 404, 76 Atl. 148, and cases cited.  The record before us does not show an abuse of discretion in the ruling under consideration.

Harry Broadwell, the husband of the murdered woman, was a witness for the State. On cross-examination he was asked about his relations with one Eva Dow, and he denied any criminal intimacy with her. The Dow woman was improved as a witness for the defence, and the respondent offered to show by her that Broadwell's statement was not true, and that they had been criminally intimate, both before and since the murder. The evidence was excluded and the respondent excepted. The purpose of the offer was two-fold: First, for the purpose of impeachment; second, to show that Broadwell had a motive for getting rid of his wife.

[10] So far as the first ground is concerned, it is hardly meeting the respondent's claim to invoke the rule that a witness cannot be contradicted on a collateral matter brought out in cross-examination. Nor is it enough to say that a person cannot be examined on a collateral matter simply for the purpose of contradiction. Here, the alleged collateral matter was impeaching in character. It was properly admitted in cross-examination under the rule discussed in connection with the exception last disposed of. That is to say, subject to the exercise of the court's discretion, the respondent could show Broadwell's illicit relations with this Dow woman that, in estimating the value of his testimony, the jury might know his moral principles. *State* v. *Fournier, supra.* So the exact question is, Can one who, in cross-examining his adversary's witness, has asked a proper discrediting question, deny the answer received, or is he bound by it? The rule of this jurisdiction was announced by Judge RED-FIELD in *Stevens* v. *Beach*, 12 Vt. 585, 36 A. D. 359, to this effect: A witness may be cross-examined as to collateral facts which tend to test his accuracy or veracity, but the cross-examiner must be content with the witness' answers, and cannot contradict them by independent proof. This holding has never been departed from in this State. The question was not involved in *McGovern* v. *Hays & Smith*, 75 Vt. 104, 53 Atl. 326, but the Court said that it was not prepared to say that the cross-examiner would not be bound by such answers. The question was involved in *Com.* v. *Jones*, 155 Mass. 170, 29 N. E. 467, and it was held that the cross-examiner was bound by the answers. Much the same thing was held in *Dalton* v. *People*, 224 Ill. 333, 79 N. E. 669.

[11] Nor will the second ground of the offer avail. While it is always competent for a respondent to give evidence tending

to show that another committed the crime of which he is charged (*Fleming* v. *State*, 95 Vt. 154, 113 Atl. 783), it is not enough to show merely that another had a motive to commit it.   There was no evidence that connected Broadwell with the criminal act itself, nor did the respondent offer to produce such evidence, without which the evidence in question was inadmissible.   *Mc-Donald* v. *State*, 165 Ala. 85, 51 So. 629; *Tatum* v. *State*, 131 Ala. 32, 31 So. 369; *Walker* v. *State*, 139 Ala. 56, 35 So. 1011; *Irvin* v. *State*, 11 Okl. Cr. 301, 146 Pac. 453; *State* v. *Brady*, 124 La. 951, 50 So. 806; *Com.* v. *Abbott*, 130 Mass. 472.   In this respect a motive in another stands like threats by another, which are, standing alone, excluded.   *State* v. *Moon*, 20 Idaho 202, 117 Pac. 757, Ann. Cas. 1913 A, 724 and note; *Carlton* v. *People*, 150 Ill. 181, 37 N. E. 244, 41 A. S. R. 346; *Com.* v. *Bednorciki*, 264 Pa. 124, 107 Atl. 666.

[12]   Rose Gibbons was a witness for the respondent.   She was allowed to testify that she lived in the house next to that occupied by the Broadwells, and that she had to pass their house in going to her own; that trees about the Broadwell house made it dark there; that prior to the murder, but not since, she had seen unidentified men, not Broadwell or the respondent, standing under these trees and around there, evidently watching for some one; that they came and looked at her as she passed. This was allowed under a ruling limiting the time to be covered by the witness to the period from the last of March to the date of the murder.   To this ruling the respondent excepted.   The evidence as a whole was inadmissible.   It was even more remotely related to the case on trial than that under the exception last considered.

[13]   The respondent offered to show by Miss Gibbons that at some time during the week before the murder Mrs. Broadwell told her that on the Saturday night before she was followed home by a Swede, and, in connection with this, that this was a Swede occupying a room at the Hotel Buzzell, near which the body was found.   The evidence was properly excluded.   It was a mere narrative of a past transaction, too plainly hearsay to require discussion.

[14]   The respondent complains that the charge referred to his admissions as a "confession," but his exception is not sufficiently specific to present any question regarding the use of this term.   *Wilson Bros. Garage* v. *Larrow*, 90 Vt. 413, 98 Atl.

902. If he desired to have it corrected, he should have called attention to it. *In re Healey's Will,* 94 Vt. 128, 109 Atl. 19. The respondent excepted to that part of the charge which related to the effect of his admissions. The court had several times reminded the jury that the respondent denied all connection with the crime charged against him, and that his admissions were to be considered in connection with all the evidence in the case, both for and against him. In the circumstances, the exception saved was not sufficiently specific to require anything further by way of instruction. The court instructed the jury regarding oral admissions, and called attention to the liability of error in their reproduction in evidence, but explained that this uncertainty did not exist when such admissions are taken by a stenographer. To this the respondent excepted, and argues here that the jury must have understood that the written statement implied absolute verity and must be taken as correct to the last word. The transcript of the statement taken stenographically was not, of course, independent evidence. Its importance as evidence came from the testimony of Mrs. Laird, who took it. It was a memorandum, properly used by her in connection with her testimony. 50 Cyc. 2457; *Baltimore* v. *State,* 132 Md. 113, 103 Atl. 426. The jurors were not to accept it absolutely and without question, but were to give it effect in exact proportion to their confidence in the skill and reliability of Mrs. Laird. But, if the charge can be taken to indicate anything different than this, the exception was not sufficiently clear and specific to bring up the point argued. *Fitzgerald* v. *Metropolitan Life Ins. Co.,* 90 Vt. 291, 98 Atl. 498.

[15] It appeared at the trial that the respondent and Mrs. Broadwell, on the night of the murder, were, for a meretricious purpose, at the place of a Mrs. Parker, who kept a bedhouse in Barre. That the respondent had there an automobile, which he was talking of buying, and which he hired for temporary use. In the charge the court reminded the jury of this car, and instructed them to consider the use he made of the car and what he got it for. To this the respondent excepted. It is argued that this amounted to a strong intimation to the jury that the respondent secured the automobile for the purpose of disposing of the body of the murdered woman, which was found a long distance from the Parker house. But the exception taken was general, no ground being stated. Therefore, if any part of the in-

struction was sound, the exception is unavailing.  *State* v. *Shaw,*
89 Vt. 121, 94 Atl. 434, L. R. A. 1915 F, 1087; *State* v. *Sargood,*
77 Vt. 80, 58 Atl. 971; *In re Healey's Will, supra.*  And a part
of the instruction was sound, for the fact that the respondent
had a car that night was for consideration, since the evidence
warranted the inference that an automobile was used in convey-
ing the body to the place where it was found.  For the same rea-
son the exception to the court's reference to what is said to be a
certain letter to Grace Grimes is unavailing.  And for the same
reason, the exception to the charge with reference to the fact that
the respondent did not take the stand cannot avail the re-
spondent.  His brief admits that the charge was sound so far as
it went, but insists that it should have gone further.  If he
thought so at that time, he should have pointed this out to the
court.  *In re Healey's Will, supra.*

[16]  The respondent excepted to the court's statement of
the respective claims of the prosecution and the respondent as
to where the murder was committed.  But, assuming the suf-
ficiency of the exception, no reversible error is disclosed.  The
court was merely stating the claim of the prosecution, and it is
wholly unimportant that the evidence did not justify that claim.
The same thing is true as to the exception to what was said in
the charge about Mrs. Broadwell's resisting an assault.  The
court was simply stating the State's claim about what certain
circumstances indicated.

[17, 18]  The court charged the jury that if the woman was
killed by the respondent in an attempt to rape her, he would be
guilty of murder in the first degree.  To this the respondent ex-
cepted.  It is urged that there was no evidence tending to show
any attempt to rape.  But we need take no time with this ex-
ception, for any error there may have been in the instruction
was harmless, since the verdict was for second degree murder.
It is a well settled rule that this Court will not reverse a case
for an error that is rendered immaterial by the verdict.  *Nones*
v. *Northouse,* 46 Vt. 587; *Sykes* v. *Bartlett,* 93 Vt. 70, 106
Atl. 561; *Bianchi* v. *Montpelier & Wells River Railroad,* 92 Vt.
319, 104 Atl. 144; *Bonazzi* v. *Fortney,* 94 Vt. 263, 110 Atl. 439;
*State* v. *Prouty,* 94 Vt. 359, 111 Atl. 559.  This rule precludes
one convicted of murder in the second degree or manslaughter
from complaining of an error in an instruction on the subject of
murder in the first degree.  *State* v. *Lewis,* 248 Mo. 498, 154 S.

W. 716; *Ross* v. *State,* 8 Wyo. 351, 57 Pac. 924; *Wells* v. *State,* 63 Tex. Cr. R. 618, 141 S. W. 96; *Loudenback* v. *Territory of Oklahoma,* 19 Okla. 199, 91 Pac. 1030, 14 Ann. Cas. 988.

[19, 20] The court defined to the jury the crime of murder in its different degrees and manslaughter, called attention to the presumptions of the law, and explained how they applied to and affected the case, and instructed them to first take up the question of guilt, and, if this was found against the respondent, to consider his guilt in connection with the crime of murder in the first degree; if that question was found in his favor, to consider his guilt in connection with the crime of murder in the second degree; and, if that question was found in his favor, to return a verdict of guilty of manslaughter. The respondent excepted, not because the court did not fully, fairly, or correctly state the law applicable, but because of the order in which the instruction directed a consideration of the different grades of the crime, claiming that they should have been directed to consider these in inverse order, beginning with the lowest grade, manslaughter. The exception is without merit. There is no hard and fast rule as to the order in which the jury shall consider these questions. If the court correctly states the law, and the jury follows the instructions in reaching a result, a respondent has no valid ground of complaint. Indeed, the more logical order for a jury to follow is the one pointed out in the charge, and this is the one always adopted by trial courts, so far as our experience indicates. Nor was the respondent harmed. That this respondent killed Lucinda Broadwell is established by the verdict. This finding could not be affected by this charge. The element that distinguishes murder from manslaughter is malice. The record shows a brutal killing—one unmistakably indicating cool depravity of heart and wanton cruelty. The verdict was of second degree murder, and it would be preposterous to say that on the record a verdict of manslaughter could have been returned. So the order in which the jury considered the grades could not have affected the result.

*Judgment that there is no error in the proceedings, and that the respondent takes nothing by his exceptions.*