### Gulf Compress Co. *v.* Alabama Great Southern R. R. Co.

[56 South. 666.]

1. CARRIERS. *Delivery of freight. Private tracks. Custom. Discrimination.*

    When a railroad company furnishes sufficient facilities of its own for the receipt and delivery of freight, there is at common law no duty resting upon it to receive or deliver freight upon a private siding or spur track.

2. DELIVERY OF FREIGHT. *Custom. Duty to deliver freight. Spur track.*

    Where the evidence showed that a carrier received and delivered freight upon a private spur track, but generally if not always, upon a contract between the parties, this did not show a custom, imposing on the carrier a duty to deliver or receive freight on such private spur track, if such a duty could be created by custom.

3. CARRIERS. *Discrimination.*

    Where a carrier received and delivered freight on private spur tracks pursuant to contracts and offers the same contract to all of its customers, there is no discrimination against any customer.

APPEAL from the chancery court of Lauderdale county. Hon. Sam Whitman, Jr., Chancellor.

Suit by the Gulf Compress Company against the Alabama Great Southern Railroad Company.  From a decree dismissing the bill, complainants appeal.

Complainant filed its bill in chancery for an injunction requiring defendant to receive and deliver cotton in carload lots or less at its compress and warehouse.  It is alleged in the bill that it had always been the custom for the railroad company to make such deliveries, and to take all cotton offered for shipment, and that the failure of the railroad company now to do so is an unjust discrimination against complainant in favor of the competitor.  The defense of the railroad company is that heretofore receipts and deliveries have been made under written contract secured by bond, and that, complainant having declined to enter into a contract satisfactory to the railroad company, the latter is under no obligation, either legal or otherwise, to perform this service.

*G. Q. Hall, Hall & Jacobson,* for appellant.

Defendant's said conduct was an actionable wrong in two respects:

First.  Because it was defendant's duty, based on custom, to deliver to the compress in cars all cotton consigned to it, whether in carload or less than carload lots; and likewise to so deliver transit cotton, intended for said compress; and to place empty cars at the compress for all out-going cotton.  Defendant has been acting in pursuance of this custom for and during the years it has been doing business with complainant's press, and has done so during the busiest part of the present season of 1910-1911, to-wit, until some time in November, 1910.

Second.  Because of defendant's illegal discrimination against the complainant's compress and in favor of the citizens, touching the delivery and receipt of cotton.  Citing the following cases:

Cook on Combinations (2nd Ed.), page 284, S. 145; 1 Hutchinson on Car. (3rd Ed.), sec. 149; Barnes' Inter-

state Transportation, page 515, sec. 360; Ib., page 522, sec. 363; 2 Hutch. on Car., sec. 539; *Railway Co.* v. *Goodridge,* 149 U. S. 680; *Railway Co.* v. *Taggart,* 149 U. S. 698; *Ohio Coal Co.* v. *Whitcomb,* 123 Fed. Rep. 359; *A. & V. R. R. Co.* v. *R. R. Commission,* 86 Miss. 667; affirmed in 203 U. S. 496; *St. Louis S. W. Ry. Co.* v. *Clay Gin Co.,* 99 S W. 532, 77 Ark. 357; *Augusta Brokerage Co.* v. *Central of Ga. Ry. Co.,* 48 S. E. 714, 121 Ga. 48; *Harp* v. *Choctaw O. & G. R. C.* (C. C. S.), 118 Fed. Rep. 169, affirmed in 125 Fed. Rep. 445, 61 C. C. A. 405, 84 S. W. 502, 73 Ark. 373; *State* v. *Atlantic Coast Line R. R. Co.,* 41 So. 705, 51 Fla. 578, 646; *Little Rock & Ft. S. Ry. Co.* v. *Oppenheimer* (64 Ark.), 44 L. R. A. 353; *A. & V. R. R. Co.* v. *R. R. Commission,* 86 Miss. 667, 203 U. S. 496.

*Catchings & Catchings,* for appellee.

Without regard, however, to what the testimony may show as to what the usage or custom has been, we affirm that no custom has been shown, and that no custom can exist, as a result of usage, which can have the force and effect of law binding upon the appellee. Many cases will be found in the precedents in which usages or customs are referred to and discussed. It will be found that unless the usage or custom has become a part of the common law by reason of its antiquity and universal application, it is always referred to by the authorities as something to be considered merely to aid in the interpretation of some ambiguity or uncertainty in a contract, or otherwise indeterminate intentions of parties. In the case of *Shackleford* v. *New Orleans, Jackson & Great Northern R. Co.,* 37 Miss. 202, this court said:

These usages, many judges are of the opinion, should be sparingly adopted by the courts as rules of law, as they are often founded on mere mistake, or on the want of enlarged and comprehensive views of the full bearings of principles. Their true office is to interpret the other

wise indeterminate intentions of parties, and to ascertain the nature and extent of the contracts, arising, not from express stipulations, but from mere implications, and presumptions and acts of a doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful or various senses. On this principle the usage or habit of trade or conduct of an individual which is known to the person who deals with him, may be given in evidence to prove what was the contract between them."

This quotation from this case is approved in the later case of *Postal Telegraph Co.* v. *Willis,* 93 Miss. 552. This court also in the latter case, quotes the following from 2 Page on Contracts, page 928:

"The true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intention of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from implications, assumptions, and acts of a doubtful or equivocal character."

This court in its opinion in the latter case, concluded by saying that where a contract is definite and certain, the obligations of a party, by reason of the contract, become fixed by law by the terms of the contract which they have entered into, and where there is nothing uncertain left in the contract, usage or custom has no place. This effect of a custom or usage however, is entirely distinct from the contention made by solicitors for the appellant. They make the particular contention that a custom has grown up which is as binding as the common law or as statute law, which the appellee can be compelled by the courts to observe. We take the broadest conceivable issue with this statement. We affirm that it is not possible that a custom can arise in the state of Mississippi which can have such binding effect as law. In *Holman* v. *Bennett,* 44 Miss. 326, this court said:

"The common law of England, brought over by the colonists as part of their heritage as British subjects,

so far as applicable to the new circumstances and condition, and so far as not changed by statute, is the law of this state." In 6 ·Am. & Eng. Ency., 273, it is said that in England the common law in its most comprehensive sense is said to embrace general customs pervading the whole realm, particular customs prevailing only in certain places, and particular laws which have been by degrees incorporated into the common law to a certain extent. It is then said: ·

"But, in its more ordinary acceptation, the common law includes only general customs and particular laws, and not customs of particular places. It is in this sense that the common law has been introduced into the United States." Minor's Inst., 33; 1 Blackstone Commentaries, 62; *Harris* v. *Carson,* 7 Leigh, 632; s. c., 30 Am. Dec. 511; *Jones* v. *Wagner,* 66 Penn. St. Rep. 429, s. c., 5 Am. Rep. 385; *Bartlett* v. *Chicago & N. W. R. Co.,* 71 N. W. 598, 96 Wis. 335.

*A. S. Bozeman,* for appellee.

Law as to Custom and Usage.—A custom to be controlling must be shown to be established and existing at the time and place of the transaction, and known to the parties. It must also be certain, uniform, and reasonable. *Shackleford* v. *Railroad Co.,* 8 Geo. 202; 4 Elliott on Railroads, section 1522.

A custom only affects contracts made in the locality where it is shown to exist. *Allen* v. *Lykes,* 6 Geo. 513.

Proof of a Custom or Usage.—Customs and usages must be proven by evidence of facts (and not by mere opinions) and by witnesses who have actual knowledge of same. *Allen* v. *Lyles,* 6 Geo. 513, 28 Ency. Law (2d Ed.), pages 411-413.

The proof of the usage must be clear and convincing. 29 Ency. Law (2nd Ed.), 414, and cases cited on note 1.

Usages are strictly construed and will not be allowed to operate beyond the classes of persons or contracts

in regard to which they prevail. 29 Ency. Law, 415, and cases cited in note.

A custom or usage on the part of the Y. & M. V. R. R. at Port Gibson, or Natchez, to deliver and receive cotton at the compress, in the absence of a contract, can not bind the Alabama Great Southern Railroad at Meridian to do likewise.

This is a matter of policy in the management of internal affairs, in which each railroad has the right to pursue its own course, according to the exigencies of each particular case. *Texas, etc. Ry. Co. v. Reed,* 88 Tex. 439.

No Unlawful Discrimination.—The discrimination charged against the defendant railroad company is that it delivers and receives cotton for the Citizens Compress, in cars at the compress, but requires the Gulf Compress Co. to receive and deliver its cotton at the defendant railroad's depot, thus imposing upon the Gulf Compress Co. the expense of draying its cotton to and from the depot.

The answer of the defendant railroad company to this charge is that it has offered, and still offers, to the Gulf Compress Co., to deliver and receive cotton at the Gulf Compress upon exactly the same terms and conditions under which it delivers and receives cotton at the Citizens Compress, to-wit, the execution of the contract and bond submitted to both compresses alike, for the seasons 1910-1911.

Identically the same contract and arrangement for receiving and delivering cotton at the compresses was offered by the railroad company, at the beginning of the season 1910-1911 to every compress upon the line of its road.

Argued orally by *G. Q. Hall,* for appellant, and *A. S. Bozeman,* for appellee.

Smith, J., delivered the opinion of the court.

Where a railroad company furnishes sufficient facilities of its own for the receipt and delivery of freight, there is at common law no duty resting upon it to receive or deliver freight upon a private siding or spur track.

Assuming, but not deciding, that a custom so to do can arise of such character as to impose this duty upon railroad companies, the evidence in the case at bar is wholly insufficient to establish such a custom. At most, it simply shows that railroad companies do receive and deliver freight upon such spur tracks, but generally, not always, upon a contract or understanding mutually agreeable to the parties thereto.

Receiving and delivering freight upon such spur track is, therefore, purely a matter of contract, to which eithe party may attach any condition desired; and since the contract which appellee offers to make with appellant with reference to such receipt and delivery of freight is identical with the contract entered into by it with all other compresses on its line, there is, of course, no discrimination in this regard by appellee against appellant.

*Affirmed.*