CHARLES BIANCHI & SONS *v.* MONTPELIER & WELLS RIVER
RAILROAD.

February Term, 1918.

Present:   WATSON, C. J., HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 8, 1918.

*Carriers—Bill of Lading—Reasonable Provisions—When Responsibility as Carrier Ceases—Arrival of Shipment—Notice to Consignees—Liability of a Warehouseman—Burden of Proof—Exceptions—When not Considered.*

A provision in a bill of lading issued by a railroad company to the effect that property received from or delivered on private or other sidings, wharves or landings shall be at owner's risk until the cars are attached to and after they are detached from the trains, is reasonable in the eye of the law and not inconsistent with public policy.

By accepting a bill of lading, a shipper is presumed to assent to, and agree to be bound by, such provisions therein as are reasonable in the eye of the law and not inconsistent with public policy.

When a car containing a shipment is delivered by a railroad company on a private siding, designated in the bill of lading, and the consignees given a reasonable opportunity to examine the shipment and take it away, the responsibility of the carrier, as such, ceases.

A terminal carrier has a right to act upon the basis that the consignees still hold the bill of lading and are the owners of the property described therein, until it is notified to the contrary.

A carrier is not bound to give notice to the consignees of the arrival of a shipment at the place of destination in order to relieve it, as such, from liability.

In the relation of warehouseman a carrier is bound only to use ordinary care and diligence in keeping the goods safely.

In an action against a carrier the burden of proof upon the question whether it has failed to use ordinary care and diligence in its relation as warehouseman is upon the plaintiff.

A terminal carrier may properly, in the performance of its duties as warehouseman, allow a granite monument to remain in the car, on a private siding designated in the bill of lading as the place of delivery, instead of putting it in a store-house.

Exceptions raising questions of damages will not be considered where liability on the part of defendant is not established.

TROVER, for the alleged misdelivery of a granite monument, shipped by plaintiffs over the defendant railroad, and consigned to themselves at St. Louis, Missouri. Plea, the general issue. Trial by court at the March Term, 1917, Washington County, *Miles,* J., presiding.

STATEMENT BY WATSON, C. J.    It is found that on the 3d day of September, 1915, the plaintiffs delivered to the defendant, at Barre, this State, the monument in question, manufactured by them for the Norman Monument Company of St. Louis, Missouri, and received of the defendant a bill of lading which is made a part of the findings. The monument consisted of four pieces, each of which was boxed and marked "Chas. Bianchi & Sons, (the plaintiffs,) St. Louis, Mo." The bill of lading reads: "Consigned to C. Bianchi & Sons. Destination St. Louis, Mo. L. H. Tieman Switch on Mo. Pac." The bill of lading had printed across its face the words, "not negotiable."

The terminal carrier, the Missouri Pacific Railroad, at the point of destination, without the production of the bill of lading, delivered the car containing the monument, onto the Tieman switch mentioned in the bill of lading. The monument was unloaded from the car by Tieman and held on wagons for twenty days, when it was delivered by him to the Norman Monument Company at Mount Sinai Cemetery, and was afterwards set up there in a family lot.

The L. H. Tieman mentioned lived at St. Louis, and had had the switch in question built by the Missouri Pacific Railroad for his convenience, it being understood that he should be responsible for the freight charges on all shipments placed on that switch. The switch or siding named abutted on Tieman's land, and no one except Tieman and the railroad company could have goods placed thereon without the former's consent.

The plaintiffs lived in Barre, this State, and had no expectation of receiving the monument personally, at St. Louis. They had previously shipped monumental work to the Tieman switch. No notice was ever given to Tieman of the arrival of the car containing the monument in question, upon the switch, except that he found it there on the tracks of the switch. He unloaded the car because Mr. Norman of the Norman Monument Company had told him that he was expecting it; but Norman had not told Tieman who the shipper was.

The bill of lading was never assigned to any one by the plaintiff, and was always in their possession until it was delivered in court at the time of the trial of this case.   The plaintiffs never gave any order for the delivery of the monument to any one; nor have they ever paid the freight for its transportation, though it was paid to the delivering railroad by some one, but by whom it did not appear.

The plaintiffs have never received pay for the monument; nor have they ever received the monument from the terminal railroad, unless the delivery onto the Tieman switch, was in law a delivery to them as consignees.

It is stated in the finding of facts that there was no evidence of any loss, misdelivery or conversion of the monument by any of the carriers unless the facts recited constitute such; and that there was no evidence of any neglect or shortage of duty on the part of the defendant unless the facts recited constitute such.

The judgment below was for the defendant, and the plaintiffs excepted.

*Richard A. Hoar* for plaintiffs.

*H. C. Shurtleff* for defendant.

WATSON, C. J.   The bill of lading stipulated the Tieman switch as the place of delivery.   The contract was controlling in this respect, and the monument was delivered by the terminal carrier at that place, accordingly.

The facts found show that the Tieman switch is a private siding built for the convenience of Tieman who, by reason thereof, became responsible for freight charges on all shipments placed thereon.   The fact that the railroad may put goods on that siding, did not make it other than private in this instance where the place of delivery was fixed by contract, with the making of which the terminal carrier had nothing to do.

The bill of lading contains a provision as follows: "Property * * * when received from or delivered on private or other sidings, wharves, or landings shall be at the owner's risk until the cars are attached to and after they are detached from trains." This provision is reasonable in the eye of the law, and not inconsistent with public policy; and the law presumes that the plaintiffs assented thereto and agreed to be bound by it.   *Davis* v.

*Central Vermont R. Co.,* 66 Vt. 290, 29 Atl. 313, 44 Am. St. Rep. 852; *Leavens* v. *American Express Co.,* 86 Vt. 342, 85 Atl. 557, Ann. Cas. 1915 C, 1188.

When the car containing the monument was delivered on the Tieman switch specified, and was detached from the train, and the consignees were given a reasonable opportunity to inspect the monument and take it away, the responsibility of the carrier, as such, ceased. *Stone* v. *Waitt,* 31 Me. 409, 52 Am. Dec. 621; *Michigan Southern, etc., R. Co.* v. *Day,* 20 Ill. 375, 71 Am. Dec. 278; *Schumacher* v. *Chicago, etc., R. Co.,* 207 Ill. 199, 69 N. E. 825; *Kingman, St. Louis Impl. Co.* v. *Southern R. Co.,* 133 Mo. App. 317, 112 S. W. 721; *Gulf Compress Co.* v. *Alabama Great Southern R. Co.,* 100 Miss. 582, 56 So. 666; 10 C. J. 233; 4 R. C. L. 833. It is urged, however, that the placing of the car upon the side track, as per bill of lading, without notice of its arrival being given to the consignees, and the bill of lading surrendered, was not such a delivery as will relieve the carrier from liability. But this position is unsound so far as surrendering the bill of lading is concerned, for that was not negotiable, and the property was delivered at the place stipulated therein. The terminal carrier had a right to act upon the basis that the consignees still held the bill of lading and were the owners of the property, until it was notified to the contrary. *National Bank* v. *Baltimore & Ohio R. Co.,* 99 Md. 661, 59 Atl. 134, 105 Am. St. Rep. 321. By the law of this State, the carrier was not bound to give notice to the consignees of the arrival of the property at the place of destination, in order to relieve it, as such, from liability. *Blumenthal* v. *Brainard,* 38 Vt. 402, 91 Am. Dec. 349. On the facts of record, there is no ground upon which the defendant can be held liable in its capacity as a common carrier.

The question then is whether the defendant is liable in its relation of a warehouseman. Assuming that the provisions quoted above from the bill of lading do not relieve the carrier from its common law duty in this respect, have the plaintiffs made out a case?

In this relation the carrier is bound only to use ordinary care and diligence in keeping the goods safely. *Blumenthal* v. *Brainard,* cited above. And the burden of proof is with the plaintiffs. The record states that there was no evidence of any neglect or shortage of duty on the part of the defendant unless

the facts recited constitute such.  The nature of the goods was such that in the performance of its duties as warehouseman, the terminal carrier might very properly let the goods remain in the car on the siding (where it was required to be placed by the bill of lading), instead of putting them in a storehouse. *Schumacher* v. *Chicago, etc., R. Co.*, cited above.  The carrier delivered the monument to no one other than the plaintiffs, nor did it authorize its removal from the car or from the siding by any one except the plaintiffs.  The facts recited do not, as matter of law, constitute neglect or shortage of duty by it, and there was no error in the judgment.

Since liability on the part of the defendant is not established, the questions argued touching the amount of damages are immaterial.

*Judgment affirmed.*