HIRAM L. SPARROW, ADMR. *v.* VERMONT SAVINGS BANK.

October Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 8, 1921.

*Exemplary Damages Against a Corporation—Malicious Prosecution of Civil Suit—Exemplary Damages May Be Awarded—Malice That Will Support Action for—Actual Malice Necessary for Exemplary Damages—Error Rendered Immaterial by Verdict.*

1.  Where the malicious and unlawful purpose relied upon as a predicate for awarding exemplary damages against a defendant corporation is that of one who was acting as the mere servant or agent of the corporation, it does not affect the corporation unless it directed the act complained of, participated in it, or subsequently ratified it; but where the malicious and unlawful purpose is that of the governing officers of the corporation, or one lawfully exercising their authority, it is liable therefor.
2.  Exemplary damages may, upon proper showing, be awarded in actions for malicious prosecution of civil suits.
3.  The malice that will support an action for the malicious prosecution of a civil suit is sufficiently established if the baseless suit was instituted from any improper and wrongful motive, and it may be inferred from the want of probable cause.
4.  The malice essential to an award of exemplary damages cannot be inferred, being actual and not implied, and must be shown by

evidence addressed especially to the question, and may be established by conduct manifesting personal ill will, or carried out under circumstances of insult or oppression, or even by conduct manifesting a reckless and wanton disregard of the plaintiff's rights.

5. The acts of defendant bank in maliciously prosecuting a civil suit against plaintiff administrator between the date of the death of his decedent and the discontinuance of the suit by the bank, did not constitute sufficient evidence of actual malice to warrant an award of exemplary damages.

6. A judgment will not be reversed for an error, as in the exclusion of evidence, that was rendered immaterial by the verdict.

ACTION OF TORT for the malicious prosecution of a civil suit. Plea, the general issue. Trial by jury at the March Term, 1919, Washington County, *Fish*, J., presiding. Verdict and judgment for the plaintiff. Both parties excepted. The opinion states the case.

*H. C. Shurtleff* and *Frank Plumley* for the plaintiff.

On the question of exemplary damages, the actual wealth of the defendant may be shown. *Rea* v. *Harrington*, 58 Vt. 188; *McCarty* v. *Miskeen*, 22 Minn. 20; *Peck* v. *Small*, 35 Minn. 466; *Webb* v. *Gilman*, 80 Me. 177; *Frye* v. *Bennett*, 4 Duer, 247.

*Harvey, Maurice, Whitney & Fitts* and *J. Ward Carver* for the defendant.

When the question of exemplary damages is not in the case, reference to the financial situation of the parties is error. *Ward* v. *Ward*, 91 Vt. 157; *Herkimer* v. *Shea*, 21 Ill. App. 85; *Taylor* v. *Harris*, 68 Ill. App. 92; *Chicago and E. I. R. Co.* v. *Garner*, 83 Ill. App. 118; *Louisville H. & St. L. Ry. Co.* v. *Morgan*, 110 Ky. 740, 62 S. W. 736; *Ill. Cent. R. Co.* v. *Proctor*, 122 Ky. 92, 89 S. W. 714; *Dallas Consol. El. St. Ry. Co.* v. *Black*, 40 Tex. App. 415, 89 S. W. 1087.

The rule in Vermont is that a plaintiff has no legal right to exemplary damages; such damages always depending upon the case, the evidence, and the finding of the jury. *Jerome* v. *Smith*, 48 Vt. 230; *Boardman* v. *Goldsmith*, 48 Vt. 403; *Snow* v. *Carpenter*, 49 Vt. 426; *Goldsmith's Admr.* v. *Joy*, 61 Vt. 488.

The question of whether there is any evidence to justify the assessment of exemplary damages is one of law for the court. 17 C. J. 972, 973; *Chicago Ry. Co.* v. *Scurr,* 59 Miss. 456, 42 A. R. 373; *Holly* v. *State,* 55 Miss. 424; *Moore* v. *Duke,* 84 Vt. 410.

POWERS, J.    In 1903, Harriet A. Bailey, late of Montpelier, brought suit against the defendant to recover certain funds deposited by and for her in the defendant's bank.    This action was returnable to the Washington county court, wherein it was continued from term to term until 1906, when Mrs. Bailey, in order to secure information regarding the deposits, started proceedings for taking the depositions of the officers and trustees of the Bank.    Thereupon, the Bank brought a bill in chancery in Windham County against Mrs. Bailey, and therein secured a temporary injunction restraining her from taking the depositions or from prosecuting her suit.    Mrs. Bailey answered this bill and filed a motion for the dissolution of this injunction.    On hearing, this motion was overruled by the chancellor.    In the fall of 1909, Mrs. Bailey died, and this plaintiff was duly appointed her administrator.    He did nothing in the chancery case until March, 1911, when he sought and had leave to enter therein as defendant, filed a supplemental answer demurring to the bill, and a motion to dissolve the injunction.    This motion was heard by the chancellor and denied, and progress was ordered.    A year later, another motion to dissolve was filed, which was duly heard and granted on the ground that the order for progress had not been complied with.    This was on March 9, 1912.    From the order dissolving the injunction, the Bank appealed, and at the October Term, 1913, this Court dismissed the appeal on the ground that the order appealed from was not a final decree and that the case remained in the court of chancery.    *Vermont Savings Bank* v. *Bailey,* 87 Vt. 220, 88 Atl. 561.    No further progress was made in the chancery proceedings until July 8, 1915, when the costs of the defendant therein were paid by the Bank, and the suit was discontinued.    On September 12, 1917, this action for malicious prosecution of the chancery suit was brought.    The defendant filed a motion to dismiss, which was overruled and an exception saved.    Then the defendant pleaded the general issue with notice of special defences.    A jury trial was had, a verdict for the plaintiff was returned, and the case was heard in this Court on excep-

tions filed by both parties.   At the hearing, however, the defendant announced that if no error was found in the plaintiff's bill, it would waive its exceptions and allow the judgment to be affirmed, and this has since been confirmed by a writing filed in the case.   So we first take up the plaintiff's exceptions.   In the consideration of these, we must assume that the action is well brought.   The court below ruled that the plaintiff could not recover any damages that Mrs. Bailey suffered on account of the chancery case, but that, on a proper showing, he could recover such damages as had resulted to her estate from the defendant's conduct of that case since her .decease.   To the last part of this ruling the defendant excepted; but in the consideration of the plaintiff's exceptions, it must be taken to be without error.

In passing upon the plaintiff's exceptions, then, we are only concerned with what the defendant Bank did in connection with the chancery case since the death of Mrs. Bailey in 1909.   What the Bank did before that time is of no interest to us except so far as it may tend to characterize its subsequent conduct. ·

[1]  1.  The court excluded evidence offered by the plaintiff bearing upon the question of exemplary damages, and ruled that, as matter of law, exemplary damages were not recoverable in this suit; to which the plaintiff excepted.   The fact that the defendant in the action is a corporation is not conclusive on this question.   Our rule in that regard is the rule of the Federal Supreme Court, and is to be found in *Bishop* v. *Readsboro Chair Co.,* 85 Vt. 141, 81 Atl. 454, 36 L. R. A. (N. S.) 1171, Ann. Cas. 1914 B, 1163.   It amounts to this :   Where the malicious and unlawful purpose relied upon is that of one who was acting as the mere servant or agent of the corporation, it does not affect the principal unless it be shown that the latter directed the act complained of, or participated in it, or subsequently ratified it.   But where the malicious and unlawful purpose is that of the governing officers of the corporation, or one lawfully exercising their authority, the corporation is held liable therefor.   *Willett* v. *St. Albans,* 69 Vt. 330, 38 Atl. 72; *Wells* v. *Boston & Maine R. R.,* 82 Vt. 108, 71 Atl. 1103, 137 A. S. R. 987.   For the purposes of this discussion we will assume that the acts relied upon as a predicate for exemplary damages were, in the eye of the law, the acts of the governing officers of the defendant.   We will also assume that the question under consideration is unaffected by the fact that the suit is brought by an administrator.

[2, 3]   That exemplary damages may, upon proper show-
ing, be awarded in this class of cases is generally admitted,
though the rule seems to be otherwise in Massachusetts.   See
*Malone* v. *Belcher*, 216 Mass. 209, 103 N. E. 637, 49 L. R. A.
(N. S.) 753, Ann. Cas. 1915 A, 830.   But to justify such an
award in such actions, it is not enough that the defendant's acts
have been wrong or unlawful; they must be tainted by the man-
ner in which or the purpose for which they were done; and inas-
much as this action is predicated, in a large measure, upon the
defendant's malice, and such malice must always be established
before a recovery can be had therein, it becomes necessary to con-
sider the character of the malice involved in the cause of action,
as well as that involved in the lawful award of exemplary dam-
ages; and to compare the one with the other.   For if they are of
the same quality and degree, there is little or no logic in their
allowance at all, unless they are allowed in all cases.   The
"malice" that lies at the basis of the action does not necessarily
involve spite, hatred, malevolence, or a corrupt design; it is
sufficiently established by showing that the baseless suit was in-
stituted from any improper and wrongful motive.   The want of
a sincere belief in the legality of the proceedings is malice enough
to support the action.   *Barron* v. *Mason*, 31 Vt. 189.   Under this
rule, the institution in bad faith of an unfounded suit would be
sufficiently malicious to support an action of this kind.   This kind
of malice has been here established by the verdict.   This kind of
malice may be inferred from the want of probable cause.   *Barron*
v. *Mason, supra; Closson* v. *Staples*, 42 Vt. 209, 1 A. R. 316.   Or,
to state it otherwise, evidence of the want of probable cause may
be, and often is, strong evidence of this kind of malice.   *Driggs* v.
*Burton*, 44 Vt. 124; *Carleton* v. *Taylor*, 50 Vt. 220.

[4]   But the malice essential to an award of exemplary dam-
ages is of a different quality and cannot be inferred in this way.
It is actual, not implied malice, and must be shown by evidence
addressed especially to that question.   It may be established by
conduct manifesting personal ill will, or carried out under cir-
cumstances of insult or oppression, or even by conduct manifest-
ing nothing worse than a reckless and wanton disregard of the
plaintiff's rights; nevertheless, something more than the malice
inferred from the want of probable cause must be shown.   *Ross* v.
*Kerr*, 30 Idaho 492, 167 Pac. 654; *Fred Mercer Dry Goods Co.* v.
*Fikes* (Tex. Civ. App.) 211 S. W. 830; *Gordon* v. *McLearn*, 123

Ark. 496, 185 S. W. 803, Ann. Cas. 1918 A, 482; *Brown* v. *Martin,* 176 N. C. 31, 96 S. E. 642; *Stanford* v. *Messick Grocery Co.,* 143 N. C. 419, 55 S. E. 815; *Ruth* v. *St. Louis Transit Co.,* 98 Mo. App. 1, 71 S. W. 1055; *Barnett* v. *Reed,* 51 Pa. St. 190, 88 A. D. 574.

So the ruling excepted to was without error unless there was evidence in the case fairly and reasonably tending to show that the defendant, since Mrs. Bailey's death, proceeded as it did in the chancery case, actuated by actual malice in the sense of personal ill will toward and a desire to injure this administrator in his representative capacity, or under the aggravated circumstances above specified, or with a reckless and wanton disregard of the administrator's rights.

[5]   If we are to accept the plaintiff's interpretation of the defendant's conduct, there can be no doubt that the case is one proper for the allowance of punitive damages. But a careful consideration of the record convinces us that such interpretation is wholly unwarranted. It must not be forgotten that we are concerned only with what happened between the dates of Mrs. Bailey's death and the discontinuance of the chancery suit. And inasmuch as nothing was done by either the administrator or the defendant until March 8, 1911, our consideration is really limited to what happened between that date and February 3, 1914, the date on which the suit was discontinued. In this connection, as suggested above, we should and do consider the defendant's prior conduct, viewed in the light thrown upon it by the evidence introduced, so far and only so far as it gives character to the acts under consideration. The statute aside, the effect of Mrs. Bailey's death was to abate the chancery suit. But this does not imply that it was fully ended and out of court. It was only necessary, however, that the death of the defendant therein be suggested on the record, and the formal order of abatement be entered. The temporary injunction (and injunctive relief was all that was sought under the bill) ran only against Mrs. Bailey, her agents and attorneys. It became inoperative at her decease. One word from this plaintiff would have saved further annoyance or expense on account of that suit. We need not say whether the statute changed the effect of Mrs. Bailey's death upon the suit, or whether the administrator was legally entitled to have the suit revived against him. For he appeared therein voluntarily and, instead of claiming an abatement, he filed an amended answer

and a motion to dissolve, while the Bank made no objection and thereafter treated the case as alive; thereby waiving any objection to the method of revival. This motion to dissolve was successfully resisted by the defendant; but, as we have seen, an order of progress was made by the chancellor. A year later the injunction was dissolved, but without prejudice to the right of the Bank to ask for a continuance of the action at law on account of the absence of Harry Lowe. The Bank unsuccessfully attempted to appeal. After the suit was discontinued it sought to secure an apportionment of costs. These are the things relied upon by the plaintiff as evidence of malice sufficiently warranting an award of punitive damages. We do not find in any of them or all of them, even when considered in the light of what had gone before and the evidence urged upon our attention, enough to require that question to be submitted to the jury. Perhaps the most questionable of these acts was the attempted appeal. But as the decision in *Peck* v. *Crane,* 25 Vt. 147, was then understood, the appeal was not even an indication of bad faith. In reaching this conclusion we do not overlook the fact that the Bank might have insisted upon an abatement at Mrs. Bailey's death, and might have discontinued its suit at any time. But these circumstances do not alone afford the requisite evidence of actual malice, nor are they sufficient when taken in connection with all the rest.

[6]    2.  It appeared that Mrs. Bailey and her two daughters were, in 1903, after the suit at law had been brought, called as witnesses before a Federal grand jury at Rutland, and that they there testified regarding the matters involved in this litigation in proceedings which resulted in the indictment of Harry Lowe for fraudulent use of the mails. Thereupon counsel for the plaintiff called upon the defendant to produce any transcript or minutes of testimony so given then in its possession. It is fairly inferable from the record that the defendant then exhibited to the court or admitted the possession of the typewritten minutes of the testimony now furnished this Court. This paper is headed "United States vs. Harry Lowe," and for present purposes we will assume that it was the testimony of Mrs. Bailey and her daughters above referred to. So far as anything in this paper tending to show that the defendant knew that the allegations of its bill were false is concerned, any error in the ruling of the court below whereby the plaintiff was deprived of its benefit as evidence on the question of liability was harmless, for the verdict was in his

favor, and the settled rule is that a judgment will not be reversed for an error that, by the verdict, is rendered immaterial. *Nones* v. *Northouse,* 46 Vt. 587; *Sykes* v. *Bartlett,* 93 Vt. 70, 106 Atl. 561; *Bianchi & Sons* v. *Montpelier & Wells River R. R.,* 92 Vt. 319, 104 Atl. 144; *Bonazzi* v. *Fortney,* 94 Vt. 263, 110 Atl. 439.

The above ground was the only ground on which the plaintiff claimed below that such minutes would be admissible. Therefore, if the usual rule is to be applied, no new ground can be urged in this Court. But in view of the fact that counsel had no opportunity to examine the paper at the trial, and to the end that he may unquestionably have all the benefit that his exception entitles him to, we take occasion to say that there is nothing whatever in the testimony of Mrs. Bailey that would affect the question regarding exemplary damages. All that she testified to of any materiality here was that she never gave Harry Lowe authority to withdraw her money as attorney or trustee, or otherwise, though she could not say that she did not give him some sort of power of attorney. So there was no reversible error under the plaintiff's exception to the action of the court in this connection.

*Judgment affirmed, without costs in this Court.*