## Yazoo & M. V. R. Co. *v.* Ussery.

(Division B.  Feb. 3, 1930.)

[126 So. 16.  No. 28331.]

Cutrer & Smith, of Clarksdale, and **Charles N. Burch, H. D. Minor** and **Clinton H. McKay,** all of Memphis, Tennessee, for appellant.

Maynard, FitzGerald & Venable, of Clarksdale, for appellee.

386

**Ethridge, P. J.,** delivered the opinion of the court.

R. W. Ussery sued the railroad company for damages for failure to carry and deliver certain cotton shipped from a station on its line to the city of Clarksdale. The cotton was consigned to the Waddell Cotton Company by R. W. Ussery in the contract of shipment between the railroad and Ussery. The bill of lading appears to have been made out on the 13th day of October, and the cotton was loaded into the car on the 14th and moved from Evansville, Mississippi, towards Clarksdale, Mississippi, on the 15th, but was placed on a side track at Lula, Mississippi, by the railroad company, and was not delivered to Clarksdale until the 27th of October. It appears from the evidence that the Waddell Cotton Company had directed the railroad to deliver all cotton shipped to it to a compress in Clarksdale, and that the said compress, about the 15th of October, notified the railroad company that its track was full, and not to ship any more to it until further notice. The railroad, on receiving this notice from the compress company, put an embargo on cotton to Clarksdale, and set the car out at Lula awaiting orders on information as to shipment, and notified the Federal Compress Company of the fact that such car had been set out.

On the same day the cotton was shipped, Ussery, the plaintiff, sold a lot of cotton, including this cotton, to cotton buyers at Helena, Arkansas, at sixteen cents per pound, and called the Waddell Cotton Company and informed it of such sale. The consignment to the Waddell Cotton Company by Ussery was for the purposes of sale by or through the Waddell Cotton Company at the market price on that day. On receipt of the message, the Waddell Cotton Company undertook to locate the shipment of cotton, but could not do so, and made inquiry at the Clarksdale office of the railroad company, but was not given information as to where the cotton was. The railroad company had given no notice either to the Waddell Cotton Company or to Ussery, the shipper, of the em-

bargo, and had asked no instructions as to its course of action under the circumstances. Further efforts were made by the plaintiff, who went to Clarksdale, and in connection with the Waddell Cotton Company tried to locate the cotton, but all efforts failed, and the sale failed because the cotton could not be delivered; the buyer at Helena having an order on which he desired to apply the cotton.

The case was tried in the county court where judgment was rendered for the plaintiff, and appealed to the circuit court where the judgment was affirmed, from which this appeal is prosecuted.

The cotton was afterwards sold in November following the shipment in October at a smaller price, and the suit is to recover the difference between the price obtained and the price for which the cotton was sold originally, but could not be delivered whereby the loss of sale was incurred. There was testimony to show that the crop for 1926, that involved in this suit, was an unusually large one, and that compresses could not handle the crop as fast as it was delivered to them, especially at the compress involved. It also appears to be the theory of the railroad that, as the cotton was to be shipped to the compress under instructions from the Waddell Cotton Company, notice to the compress was sufficient notice to the consignee to protect the railroad. As stated above, the compress was not a party to the contract; Ussery, the shipper, consigned the cotton to the Waddell Cotton Company as the shipper's agent in making a sale of it, while that was not shown on the bill of lading; the bill showed a consignment to the Waddell Cotton Company by Ussery. It further appeared from the record that neither the compress company, Waddell Cotton Company, nor Ussery was notified that team track delivery could be made, but the railroad seemed to proceed upon the theory that it was the duty of the consignee to request team track delivery if that was desired. The contract of shipment between the railroad company and Ussery did not call for a delivery to the compress, or to

any particular track or place on the railroad other than at Clarksdale, Mississippi. The compress company not being a party to the contract, but the contract calling for a delivery to the Waddell Cotton Company, and the Waddell Cotton Company having requested the railroad company to deliver cotton consigned to it at the compress, it was the duty of the railroad company to notify the Waddell Cotton Company that it could not deliver at the compress, and request instructions from both the consignee and the consignor when the situation had developed; its duty under the contract was to deliver the cotton with reasonable promptness at Clarksdale, Mississippi. If it could not do that, then it should have given notice of its inability to do so, and request instructions; not having done so, it was liable for the loss occasioned by the delay. See Alabama & V. Ry. Co. v. Brichetto, 72 Miss. 891, 18 So. 421; Alabama & V. R. Co. v. Hayne, 76 Miss. 538, 24 So. 907; Yazoo & M. V. R. R. Co. v. Blum Co., 88 Miss. 180, 40 So. 748, 10 L. R. A. (N. S.) 432; Gulf Compress Co. v. A. G. S. R. R. Co., 100 Miss. 582, 56 So. 666.

We have examined the evidence in the case, and think it is sufficient to sustain the judgment rendered. Judgment of the court below will therefore be affirmed.

Affirmed.

On Suggestion of Error.

**Ethridge, P. J.,** delivered the opinion of the court.

In the former opinion in this case we used the language: "On the same day the cotton was shipped, Ussery, the plaintiff, sold a lot of cotton, including this cotton, to cotton buyers at Helena, Arkansas, at sixteen cents per pound, and called the Waddell Cotton Company and informed it of such sale, . . . the sale failed because the cotton could not be delivered; the buyer at Helena having an order on which he desired to apply the cotton."

It is urged in the suggestion of error that this is special damage as distinguished from general damage, and that special damages could not be allowed unless the carrier, at or before the shipment, was given notice of the sale. The suit was for general damages based upon the difference in the market value of the cotton at the date it should have reached Clarksdale, and the market value of the cotton on the date that it did reach that place.

The plaintiff, Ussery, in the examination, was asked questions and made answer as follows:

"Q. Are you familiar with the grades and prices of cotton of this character, are you familiar with the grades and prices of cotton? A. Yes, sir, fairly.

"Q. Do you know the price of cotton along about that time? A. I know what I got for cotton, the same cotton at the same time.

"Q. What did you receive for cotton of this grade, kind and type at this time? A. Sixteen cents."

In a cross-examination of this witness, in answer to a question as to when the sale to buyer at Helena occurred, he stated that the sale was made a few days after the shipment. The shipment was made according to the bill of lading, at least the bill of lading was dated on the 13th of October, and the order was recorded on the 14th and shipped on the 15th. This cotton, according to the plaintiff, was sold to one Evans at Helena, and he was asked questions as follows:

"Q. I will ask you to state to the court whether or not you purchased cotton from Mr. Ussery during the month of October, 1926? A. I did.

"Q. What sort of cotton was that? A. Delfos.

"Q. Long staple? A. Yes, sir.

"Q. State whether or not at that time you agreed to buy any more cotton from Mr. Ussery. A. I agreed to buy from Mr. Ussery his cotton, yes, sir. He said he had shipped some to Clarksdale, and it was shipped at the same time that this was shipped to me.

"Q. What did you offer him for that cotton? A. I believe it was sixteen cents.

"Q. What did you pay for the cotton you bought at Helena? A. Sixteen cents.

"Q. State whether or not that the price of cotton of that grade and staple the market price? A. It was, the market prices, yes, sir.

"Q. Was that price based on the Helena market? A. Yes, sir, that was the Helena market, that was net to Mr. Ussery, the sixteen cents was."

This shows that the sale was at the market price in Helena.

There was testimony in the record also that the market at Helena and Clarksdale was the same. Also there was testimony that the price from October 27th to November 12th, the date when the cotton was actually sold, was practically the same; the price at which it was sold on that date was testified in the record. There was testimony for the defendant showing the price of cotton on October 14th and October 26th based upon market data, upon which the witness fixed the price of each day and showed a variance between the two days of fifty points.

It was also stated in the suggestion of error that there is no competent proof in the record of the number of bales involved in the shipment, and, in the absence of such proof, that there is no basis upon which the damages could be calculated even if the market value purported had been substantially shown. While the plaintiff was upon the stand, he was asked to identify sales of cotton made by the Waddell Cotton Company for him. After both parties had closed the evidence, the plaintiff moved the court to be permitted to reopen the cause and introduce Mr. Waddell and receipts issued by him to Mr. Ussery for the cotton concerned in the litigation, the receipts showing the compress numbers, the marks, gin numbers and weights, said receipts being overlooked through oversight of counsel. A reopening was objected to, but the court sustained a motion. It was then agreed: "It is agreed that if Mr. Ussery were introduced as a witness in this case he would identify two papers which are shown as cotton receipts and which show the num-

bers, compress numbers, gin numbers, marks and weight furnished him by the compress company, and would swear that this is the cotton involved in the controversy in this case.'' This was objected to, however, as to the competency of the weights of the cotton.

As we understand it, the cotton was sold upon the weights furnished by the compress, which was listed in the sales list so as to show the weight of each bale of cotton. Much latitude is allowed in questions of this kind where, in the course of business, dealing products are sold by the weights of the compress, or railroad, and similar business enterprises, because weights are commonly known to be carefully made and accurately recorded. We think this was sufficient to establish prima facie the weight of the several bales of cotton. There is no challenge, as we understand it, of the correctness of this as a matter of fact, but it is contended that it should be insufficient unless the party weighing it testified. As cotton is customarily sold on compress weights and accepted by buyers as being correct in general business transactions, we think the proof is sufficient to show, in the absence of contradictory evidence, the weight of the several bales of cotton.

The suggestion of error will, therefore, be overruled. Overruled.